# UNITED STATES *v.* MARTIN LINEN SUPPLY CO.

## ET AL.

No. 76–120.  Argued February 23, 1977—Decided April 4, 1977

BRENNAN, J., delivered the opinion of the Court, in which STEWART, WHITE, MARSHALL, BLACKMUN, and POWELL, JJ., joined. STEVENS, J., filed an opinion concurring in the judgment, *post,* p. 576. BURGER, C. J., filed a dissenting opinion, *post,* p. 581. REHNQUIST, J., took no part in the consideration or decision of the case.

*Frank H. Easterbrook* argued the cause for the United States *pro hac vice.* With him on the brief was *Solicitor General Bork.*

*J. Burleson Smith* argued the cause and filed a brief for respondents.

MR. JUSTICE BRENNAN delivered the opinion of the Court.

A "hopelessly deadlocked" jury was discharged when unable to agree upon a verdict at the criminal contempt trial of respondent corporations in the District Court for the Western District of Texas.[1] Federal Rule Crim. Proc. 29 (c) provides

---

[1] The criminal contempt proceeding was filed in 1971 and charged respondents, two commonly owned linen supply companies, and their president, William B. Troy, with violation of a consent decree entered in 1969 as the final judgment in an antitrust suit. The petitions were originally dismissed by the District Court but the dismissal was reversed by the Court of Appeals, 485 F. 2d 1143 (1973). The Government filed a supplemental criminal contempt petition on which trial was had in February 1975. On February 21, 1975, the jury was discharged after returning the not-guilty verdict as to Troy and announcing that it was "hopelessly deadlocked" as to respondent corporations. Six days later, on February 27, 1975, respondents filed their motions for judgments of

that in such case "a motion for judgment of acquittal may be made . . . within 7 days after the jury is discharged [and] the court may enter judgment of acquittal. . . ." [2] Timely motions for judgments of acquittal under the Rule made by respondents six days after the discharge of the jury resulted two months later in the entry by the District Court of judgments of acquittal.[3] The sole question presented for our

acquittal under Rule 29 (c). On April 24, 1975, the District Court granted the motions and entered judgments of acquittal.

[2] Rule 29 provides:

"Motion for Judgment of Acquittal

"(a) MOTION BEFORE SUBMISSION TO JURY. Motions for directed verdict are abolished and motions for judgment of acquittal shall be used in their place. The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses. If a defendant's motion for judgment of acquittal at the close of the evidence offered by the government is not granted, the defendant may offer evidence without having reserved the right.

"(b) RESERVATION OF DECISION ON MOTION. If a motion for judgment of acquittal is made at the close of all the evidence, the court may reserve decision on the motion, submit the case to the jury and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict.

"(c) MOTION AFTER DISCHARGE OF JURY. If the jury returns a verdict of guilty or is discharged without having returned a verdict, a motion for judgment of acquittal may be made or renewed within 7 days after the jury is discharged or within such further time as the court may fix during the 7-day period. If a verdict of guilty is returned the court may on such motion set aside the verdict and enter judgment of acquittal. If no verdict is returned the court may enter judgment of acquittal. It shall not be necessary to the making of such a motion that a similar motion has been made prior to the submission of the case to the jury."

[3] After dismissal of the jury, the District Judge advised counsel for all parties that he would be inclined "to enter a judgment of acquittal as to [respondents] if an appropriate motion was made." App. 31. He said that he had "almost instructed a verdict for all Defendants" because the

decision is whether these judgments of acquittal under Rule 29 (c) are appealable by the United States pursuant to 18 U. S. C. § 3731. Section 3731 provides that an appeal by the United States in a criminal case "shall lie to a court of appeals from a . . . judgment . . . of a district court dismissing an indictment . . . , except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution." [4] The Court of Appeals for the Fifth Circuit held that no appeal lay under § 3731 from the judgments of acquittal entered by the District Court under Rule 29 (c). 534 F. 2d 585 (1976). The Court of Appeals reasoned that, since reversal of the acquittals would enable the United States to try respondents a second time, the bar of the Double Jeopardy Clause "leads inescapably to the conclusion that no appeal lies from the directed verdict ordered by the court below." *Id.*, at 589.[5] We granted certiorari. 429 U. S. 917 (1976). We affirm.

---

Government's case "is without a doubt the weakest [contempt case that] I've ever seen." *Id.*, at 30.

[4] In pertinent part, § 3731 provides:

"§ 3731. Appeal by United States

"In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution."

Although this provision authorizes appeal from a district court "dismiss[al]" rather than "acquittal," it is now established that the form of the ruling is not dispositive of appealability in a statutory sense, see *infra*, at 568.

[5] In characterizing the trial court's action as a "directed verdict," the Court of Appeals erred in terminology, for Rule 29 (a) expressly substitutes "judgment of acquittal" for "directed verdict." As shall be seen, however, see *infra*, at 573, the purely formal nature of the change in federal criminal procedure marked by Rule 29 speaks strongly in favor of treating Rule 29 judgments of acquittal the same as their predecessor directed verdicts for purposes of invoking double jeopardy. See *Fong Foo* v. *United States*, 369 U. S. 141 (1962).

## I

It has long been established that the United States cannot appeal in a criminal case without express congressional authorization. *United States* v. *Wilson,* 420 U. S. 332, 336 (1975); *United States* v. *Sanges,* 144 U. S. 310 (1892). Only two Terms ago *Wilson* traced the uneven course of such statutory authority until 1970 when Congress amended the Criminal Appeals Act, 420 U. S., at 336–339, and that history need not be repeated here. See also *United States* v. *Sisson,* 399 U. S. 267, 307–308 (1970). It suffices for present purposes that this Court in *Wilson* found that in enacting § 3731 as Title III of the Omnibus Crime Control Act of 1970, 84 Stat. 1890, "Congress intended to remove all statutory barriers to Government appeals and to allow appeals whenever the Constitution would permit." 420 U. S., at 337. Therefore, unless barred by the Double Jeopardy Clause of the Constitution, appeals by the Government from the judgments of acquittal entered by the District Court under Rule 29 (c) are authorized by § 3731.

Consideration of the reach of the constitutional limitations inhibiting governmental appeals was largely unnecessary during the prior regime of statutory restrictions. But see *Fong Foo* v. *United States,* 369 U. S. 141 (1962); *Kepner* v. *United States,* 195 U. S. 100 (1904). However, now that Congress has removed the statutory limitations to appeal and the relevant inquiry turns on the reach of the Double Jeopardy Clause itself, it has become "necessary to take a closer look at the policies underlying the Clause in order to determine more precisely the boundaries of the Government's appeal rights in criminal cases." *United States* v. *Wilson, supra,* at 339. In the few cases decided since 1970 that have taken this "closer look," many of the policies shaping restrictions on governmental appeal rights have been brought into sharper focus.

"The development of the Double Jeopardy Clause from its

common-law origins . . . suggests that it was directed at the threat of multiple prosecutions, not at Government appeals, at least where those appeals would not require a new trial." *Id.*, at 342. Thus *Wilson* held that the "controlling constitutional principle" focuses on prohibitions against multiple trials. *Id.*, at 346. At the heart of this policy is the concern that permitting the sovereign freely to subject the citizen to a second trial for the same offense would arm Government with a potent instrument of oppression. The Clause, therefore, guarantees that the State shall not be permitted to make repeated attempts to convict the accused, "thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green* v. *United States,* 355 U. S. 184, 187–188 (1957); see also *Downum* v. *United States,* 372 U. S. 734, 736 (1963). "[S]ociety's awareness of the heavy personal strain which a criminal trial represents for the individual defendant is manifested in the willingness to limit the Government to a single criminal proceeding to vindicate its very vital interest in enforcement of criminal laws." *United States* v. *Jorn,* 400 U. S. 470, 479 (1971) (Harlan, J.).[6]

In animating this prohibition against multiple prosecutions, the Double Jeopardy Clause rests upon two threshold conditions. The protections afforded by the Clause are implicated only when the accused has actually been placed in jeopardy. *Serfass* v. *United States,* 420 U. S. 377 (1975). This state of jeopardy attaches when a jury is empaneled and sworn, or, in a bench trial, when the judge begins to receive evidence. *Illinois* v. *Somerville,* 410 U. S. 458, 471 (1973) (WHITE, J., dissenting); *Downum* v. *United States, supra.* Further, where

---

[6] The Double Jeopardy Clause also accords nonappealable finality to a verdict of guilty entered by judge or jury, disabling the Government from seeking to punish a defendant more than once for the same offense. See *Ex parte Lange,* 18 Wall. 163 (1874).

a Government appeal presents no threat of successive prosecutions, the Double Jeopardy Clause is not offended. Thus a postverdict dismissal of an indictment after a jury rendered a guilty verdict has been held to be appealable by the United States because restoration of the guilty verdict, and not a new trial, would necessarily result if the Government prevailed. *United States* v. *Wilson, supra.*[7]

## II

None of the considerations favoring appealability is present in the case of a Government appeal from the District Court's judgments of acquittal under Rule 29 (c) where the jury failed to agree on a verdict. The normal policy granting the Government the right to retry a defendant after a mistrial that does not determine the outcome of a trial, *United States* v. *Perez,* 9 Wheat. 579, 580 (1824), is not applicable since valid judgments of acquittal were entered on the express authority of, and strictly in compliance with, Rule 29 (c). Those judgments, according to the very wording of the Rule, act to terminate a trial in which jeopardy has long since attached.[8] And a successful governmental appeal reversing the judgments of acquittal would necessitate another trial, or, at least, "further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged . . . ." *United States* v. *Jenkins,* 420 U. S. 358, 370 (1975). Therefore, the present case is not one where the

---

[7] The absence of a threatened second trial mitigates the possibility of governmental jury shopping and substantially reduces the expense and anxiety to be borne by the defendant. In addition, the Government's interest in preserving a conviction fairly attained obviously is far greater than its interest in investing additional time and resources in reprosecuting a defendant following a jury's failure to reach a verdict and a trial court's judgment of acquittal.

[8] A motion under Rule 29 for a judgment of acquittal can be entertained, at the earliest, "after the evidence on either side is closed . . . ." This stage of the trial obviously arises well after jeopardy has attached.

double jeopardy bar to appealability is automatically averted. Rather, we must inquire further into the constitutional significance of a Rule 29 (c) acquittal.

Perhaps the most fundamental rule in the history of double jeopardy jurisprudence has been that "[a] verdict of acquittal . . . could not be reviewed, on error or otherwise, without putting [a defendant] twice in jeopardy, and thereby violating the Constitution." *United States* v. *Ball,* 163 U. S. 662, 671 (1896). In *Fong Foo* v. *United States, supra,* for example, a District Court directed jury verdicts of acquittal and subsequently entered formal judgments of acquittal. The Court of Appeals entertained the appeal of the United States and reversed the District Court's ruling on the ground that the trial judge was without power to direct acquittals under the circumstances disclosed by the record. We reversed, holding that, although the Court of Appeals may correctly have believed "that the acquittal was based upon an egregiously erroneous foundation, . . . [n]evertheless, '[t]he verdict of acquittal was final, and could not be reviewed . . . without putting [the defendants] twice in jeopardy, and thereby violating the Constitution.'" 369 U. S., at 143. See also *Kepner* v. *United States, supra; United States* v. *Sisson,* 399 U. S., at 289–290; *Serfass* v. *United States, supra,* at 392. In applying this teaching of *Ball, Fong Foo,* and like cases, we have emphasized that what constitutes an "acquittal" is not to be controlled by the form of the judge's action. *United States* v. *Sisson, supra,* at 270; cf. *United States* v. *Wilson,* 420 U. S., at 336.[9] Rather, we must determine whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged.

There can be no question that the judgments of acquittal

---

[9] The Court must inquire whether "the ruling in [defendant's] favor was actually an 'acquittal' even though the District Court characterized it otherwise." *United States* v. *Wilson,* 420 U. S. 332, 336 (1975).

entered here by the District Court were "acquittals" in substance as well as form. The District Court plainly granted the Rule 29 (c) motion on the view that the Government had not proved facts constituting criminal contempt.[10]   The court made only too clear its belief that the prosecution was " 'the weakest [contempt case that] I've ever seen.' "   534 F. 2d, at 587.   In entering the judgments of acquittal, the court also recorded its view that " 'the Government has failed to prove the material allegations beyond a reasonable doubt' " and that " 'defendant should be found "not guilty." ' "

Thus, it is plain that the District Court in this case evaluated the Government's evidence and determined that it was legally insufficient to sustain a conviction.   The Court of Appeals concluded that this determination of insufficiency of the evidence triggered double jeopardy protection.[11]   The Government, however, disputes the constitutional significance of the District Court's action.   It submits that only a verdict of acquittal formally returned by the jury should absolutely bar further proceedings and that "[o]nce the district court declared a mistrial and dismissed the jury, any double jeopardy bar to a second trial dissolved."   Brief for United States 21.   We cannot agree.

Of course, as the Government argues, in a jury trial the primary finders of fact are the jurors.   Their overriding responsibility is to stand between the accused and a potentially arbitrary or abusive Government that is in command of the criminal sanction.   For this reason, a trial judge is prohibited from entering a judgment of conviction or directing the jury to come forward with such a verdict, see *Sparf & Hansen* v. *United States,* 156 U. S. 51, 105 (1895); *Carpenters* v. *United*

---

[10] Rule 29 (a) in terms authorizes a judgment of acquittal "if the evidence is insufficient to sustain a conviction of such offense or offenses."

[11] The only other Court of Appeals specifically to address this issue reached the same conclusion.   *United States* v. *Suarez,* 505 F. 2d 166 (CA2 1974) (*per curiam*).

*States*, 330 U. S. 395, 408 (1947), regardless of how over-whelmingly the evidence may point in that direction. The trial judge is thereby barred from attempting to override or interfere with the jurors' independent judgment in a manner contrary to the interests of the accused.

Such a limitation on the role of a trial judge, however, has never inhibited his ruling in favor of a criminal defendant. *Fong Foo* v. *United States*, 369 U. S. 141 (1962), establishing the binding nature of a directed verdict, is dispositive on that point. Since Rule 29 merely replaces the directed-verdict mechanism employed in *Fong Foo*, and accords the federal trial judge greater flexibility in timing his judgment of acquittal, no persuasive basis exists for construing the Rule as weakening the trial court's binding authority for purposes of double jeopardy.[12] Rather, the Notes of the Advisory Committee have confirmed that Rule 29 intends no substantive alteration in the role of judge or jury, but creates a purely formal modification of the directed-verdict device in order "to make the nomenclature accord with the realities." 18 U. S. C. App., p. 4504. Accordingly, *United States* v. *Sisson*, *supra*, at 290, held that Rule 29 recognizes no "legal distinction" between judge and jury with respect to the invocation of the protections of the Double Jeopardy Clause.

The Government, however, would read *Fong Foo* and, by implication, Rule 29 differently. It argues that the judge's directed verdict in *Fong Foo* was binding for double jeopardy

---

[12] In the situation where a criminal prosecution is tried to a judge alone, there is no question that the Double Jeopardy Clause accords his determination in favor of a defendant full constitutional effect. See *United States* v. *Jenkins*, 420 U. S. 358, 365–367 (1975). Even though, as proposed here by the Government with respect to a Rule 29 judgment of acquittal, it can be argued that the prosecution has a legitimate interest in correcting the possibility of error by a judge sitting without a jury, the Court in *Jenkins* refused to accept theories of double jeopardy that would permit reconsideration of a trial judge's ruling discharging a criminal defendant.

purposes because the formal verdict of acquittal, though on direction, was rendered not by the judge, but by the jury, which then was discharged. This in effect turns the constitutional significance of a Rule 29 judgment of acquittal on a matter of timing. Thus, if the judge orders entry of judgment of acquittal on his own or on defendant's motion prior to submission of the case to the jury, as he may under Rule 29 (a), or after submission but prior to the jury's return of a verdict, as authorized by Rule 29 (b)—and the jury thereafter is discharged—the Government's argument necessarily concedes that the Double Jeopardy Clause would preclude both appeal and retrial. If, however, the judge chooses to await the outcome of the jury's deliberations and, upon its failure to reach a verdict, acts on a timely motion for acquittal filed under Rule 29 (c) within seven days of its discharge, the Government submits that the Double Jeopardy Clause should not bar an appeal.

We are not persuaded. Rule 29 contemplated no such artificial distinctions. Rather the differentiations in timing were intentionally incorporated into the Rule to afford a trial judge the maximum opportunity to consider with care a pending acquittal motion. Insofar as the Government desires an appeal to correct error, irrational behavior, or prejudice on the part of the trial judge, its interest is not dependent on the point of trial when the judge enters his Rule 29 judgment, and suffers no special prejudice by a judge's acquittal after the jury disagrees and is discharged.[13] And to the extent that

---

[13] The Advisory Committee that framed Rule 29 explicitly noted that subdivision (c), permitting the entry of a judgment of acquittal after the jury's discharge, works no undue prejudice on the Government because the prosecution has no constitutionally sanctioned interest in receiving a verdict from the jury: "The constitutional requirement of a jury trial in criminal cases is primarily a right accorded to the defendant." 18 U. S. C. App., p. 4505. Cf. *Singer* v. *United States,* 380 U. S. 24 (1965). Any Government right to demand a jury verdict is limited to that afforded by Fed. Rule Crim. Proc. 23 (a) (jury trial waivable with the consent of the

the judge's authority under Rule 29 is designed to provide additional protection to a defendant by filtering out deficient prosecutions, the defendant's interest in such protection is essentially identical both before the jury is allowed to come to a verdict and after the jury is unable to reach a verdict: In either case, the defendant has neither been condemned nor exculpated by a panel of his peers and, in the absence of intervention by the trial judge, his vindication must await further action by a. jury.

We thus conclude that judgments under Rule 29 are to be treated uniformly and, accordingly, the Double Jeopardy Clause bars appeal from an acquittal entered under Rule 29 (c) after a jury mistrial no less than under Rule 29 (a) or (b). *United States* v. *Sanford,* 429 U. S. 14 (1976), does not dictate a contrary result. In *Sanford,* a jury trial ended in the declaration of a mistrial. A judgment of acquittal was never entered. Some four months later, with the second trial well into the preparatory stage, the trial court dismissed the prosecution's indictment. Because the dismissal "occurred several months after the first trial had ended in a mistrial, but before the retrial of respondents had begun," *id.,* at 16, the Court characterized the judge's dismissal as "a pretrial order," *ibid.,* and concluded that its appealability was governed by *Serfass* v. *United States,* 420 U. S. 377 (1975). The Court's linking of *Sanford* with *Serfass* highlights the distinctiveness of an acquittal under Rule 29 (c). In *Serfass* the Court carefully distinguished between appeal of a pretrial order and appeal of " 'a legal determination on the basis of facts adduced at the trial relating to the general issue of the case.' " 420 U. S., at 393, quoting *United States* v. *Sisson,* 399 U. S., at 290 n. 19. A Rule 29 acquittal, however, falls squarely within the latter category: By the very language of

---

Government) and, of course, can be qualified by authority granted the trial judge under Rule 29.

the Rule, such a judgment of acquittal plainly concludes a pending prosecution in which jeopardy has attached, following the introduction at trial of evidence on the general issue. In that circumstance we hold that "although retrial is sometimes permissible after a mistrial is declared but no verdict or judgment has been entered, the verdict of acquittal fore-closed retrial and thus barred appellate review." *United States* v. *Wilson,* 420 U. S., at 348.

*Affirmed.*

MR. JUSTICE REHNQUIST took no part in the consideration or decision of this case.

MR. JUSTICE STEVENS, concurring in the judgment.

There is no statutory authority for a Government appeal from a judgment of acquittal in a criminal case. The plain language of 18 U. S. C. § 3731, together with its unambiguous legislative history, makes it perfectly clear that Congress did not authorize—and did not intend to authorize—appeals from acquittals.[1]

---

[1] The contrary dictum in *United States* v. *Wilson,* 420 U. S. 332, 336–339; *United States* v. *Jenkins,* 420 U. S. 358, 363–364; *Serfass* v. *United States,* 420 U. S. 377, 383–387, is not controlling for these reasons: First, the statutory issue was not in dispute in any of those cases. Two of the defendants expressly conceded the applicability of the statute in their cases, Brief for Respondent in *United States* v. *Wilson,* O. T. 1974, No. 73–1395, p. 2; Brief for Respondent in *United States* v. *Jenkins,* O. T. 1974, No. 73–1513, p. 10. The third defendant simply failed to address the statutory issue, see Brief for Petitioner in *Serfass* v. *United States,* O. T. 1974, No. 73–1424, probably because his case involved a pretrial dismissal of the indictment. Hence, the Court was unaided by an adversary presentation of the issue. Moreover, re-examination of the language used in the decisions would not undermine their holdings. The two cases in which the Court upheld the Government appeal clearly did not involve acquittals on the merits. (*Serfass* was a pretrial dismissal; *Wilson* was a dismissal on speedy trial grounds.) The third case, *Jenkins,*

Prior to its most recent amendment in 1970, the Criminal Appeals Act had been a source of great confusion, "a most unruly child that has not improved with age," *United States v. Sisson,* 399 U. S. 267, 307. The Act had been construed to incorporate obscure distinctions between various types of dismissals, some of which were appealable directly to this Court, some to the court of appeals, and some that could not be appealed to either court.[2] However, the one thing that had always been clear was that "no appeal [could] be taken by the Government from an acquittal no matter how erroneous the legal theory underlying the decision," *id.,* at 299.

The 1970 amendment changed the law by eliminating all distinctions between different kinds of dismissals, but neither the present statute nor any of its predecessors has ever authorized an appeal from an acquittal. The statute, in relevant part, now reads:

> "In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court *dismissing an indictment or information* as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution." 18 U. S. C. § 3731 (emphasis added).

arguably involved an acquittal, but the Court held on constitutional grounds that the appeal was barred.

Second, as I indicate in the text, *infra,* at 581, it is perfectly clear that the dictum is incorrect. In view of our special responsibility for supervising the proper functioning of the federal criminal justice system, we should not hesitate to correct a plain mistake involving a technical problem of procedure when there has been no prejudicial reliance on that mistake.

[2] The difficulty of the problems presented by the statute is illustrated by the sharply divided conclusions reached in the various opinions in cases such as *United States* v. *Sisson,* 399 U. S. 267; *United States* v. *Ponto,* 454 F. 2d 657 (CA7 1971) (en banc); *United States* v. *Apex Distributing Co.,* 270 F. 2d 747 (CA9 1959) (en banc).

There is nothing in this statutory language to suggest that a judgment of acquittal, as opposed to a dismissal, is appealable.

The legislative history demonstrates that Congress intended to eliminate nonconstitutional barriers to appeals from dismissals, but did not intend to allow appeals from acquittals. As this Court has recognized, the Senate Report is the key to the legislative history.[3] The Report opens by describing the purpose of the bill as being "to resolve serious problems which frequently have arisen with respect to the right of the United States to appeal rulings which terminate prosecutions *other than by judgments of acquittal* . . . ." S. Rep. No. 91–1296, p. 2 (1970) (emphasis added). Apart from the problem of direct Supreme Court review, the Report states that the "major problem that has arisen under the present statute concerns the total lack of appealability of *certain kinds of dismissals and suppressions.*" *Id.*, at 4 (emphasis added). The Report then discusses at length the then-existing limitations on appeals from dismissals.[4] The Committee believed

---

[3] The significance of this Senate Report in understanding the Act was well expressed in *Serfass* v. *United States, supra,* at 387 n. 10:

"The relevance and significance of the 'well considered and carefully prepared' report of the Senate Judiciary Committee, see *Schwegmann Bros.* v. *Calvert Distillers Corp.,* 341 U. S. 384, 395 (1951) (Jackson, J., concurring), is not affected by the fact that the amendments proposed by the Committee and adopted without change by the Senate were modified by the House-Senate Conference Committee. See H. R. Conf. Rep. No. 91–1768, p. 21 (1970). The latter report contains no explanation of the changes made, and the changes themselves are consistent with the intent expressed in the Senate Report. See *United States* v. *Wilson, ante,* at 337–339."

[4] Subsection A is entitled "The Nature of the District Court Decision as a Limitation on Appeals from Dismissals," and begins with the statement that "[t]he now-archaic terminology employed in the original statute . . . unnecessarily precludes the Government from appealing many dismissals of prosecutions." S. Rep. No. 91–1296, at 5. The Report then states that the current Act "does not provide for an appeal by the United States to any court in a large variety of cases where the dismissal is based

that the Constitution allowed the Government to appeal any dismissal, *id.*, at 7–12, and stated that the bill was "intended to be liberally construed so as to effectuate its purpose of permitting the Government to appeal from *dismissals* of criminal prosecutions by district courts in all cases where the Constitution permits . . . ." *Id.*, at 18 (emphasis added). On the other hand, the Committee believed that the Constitution barred any appeal from an acquittal or from a dismissal amounting to an acquittal; "[a] true acquittal is based upon the insufficiency of the evidence to prove an element of the offense." *Id.*, at 11.

The same understanding was demonstrated by the bill's sponsor when he presented the Senate Report on the floor. He summarized the bill as providing that "the Government has the right to appeal any ruling by a district court in a criminal case which dismisses a prosecution in favor of a defendant except where the ruling is an acquittal"; he also presented a letter from the Solicitor General explaining that the bill would allow "an appeal from any dismissal except one amounting to a 'judgment of acquittal,' *i. e.*, a factual judgment that the defendant is not guilty of the crime charged and is thereby entitled to protection against double jeopardy." 116 Cong. Rec. 35659 (1970) (remarks of Sen. Hruska).

on grounds having nothing to do with any defect in the indictment, or the construction or invalidity of the underlying statute." *Ibid.* The Report gives as examples dismissals for failure of the prosecution to comply with discovery or for lack of timely prosecution. The Report then refers to the use of old common-law terms like " 'judgment sustaining a motion in bar,' " giving rise to problems like that which the Court confronted in *United States* v. *Sisson, supra.* S. Rep. No. 91–1296, p. 6.

Subpart B of the Senate Report deals with "The Attachment of Jeopardy as a Limitation on Appeals from Dismissals." This section was concerned with appeal of "a decision sustaining a motion in bar after jeopardy has attached," *ibid.* Congress was concerned that a defendant could reserve issues of law until the trial and then preclude any possible review. *Id.*, at 7. An example was a case in which the trial judge ruled the Selective Service Act unconstitutional during the trial. *Id.*, at 11.

As the Court explained in *Wilson,* the Conference Committee made a minor change in the wording of the bill. See *Wilson,* 420 U. S., at 338. That change narrowed the bill in two respects. The Senate bill had allowed appeals from dismissals and also from any order "terminating a prosecution in favor of a defendant," and had expressly barred appeals from a judgment of acquittal.[5] In short, as the Conference Committee stated, the Senate bill authorized an appeal from "any decision or order terminating a prosecution except an acquittal," H. R. Conf. Rep. No. 91–1768, p. 21 (1970). The Conference Committee's change narrowed the bill by deleting the reference to orders "terminating a prosecution in favor of a defendant," leaving only dismissals appealable. (This deletion rendered superfluous the exception for acquittals, which was also deleted.) The Committee's change also narrowed the bill by barring any appeal, even from a dismissal, when further prosecution would violate double jeopardy.

An attempt to authorize the Government to appeal from acquittals would have represented a radical change in the law. The sponsor of the bill apparently did not understand the legislation to have such far-reaching effects; he described it as "noncontroversial legislation which would do away with unnecessary and perplexing jurisdictional problems in appeals by the Government in criminal cases . . . ." 116 Cong. Rec. 35659 (1970) (remarks of Sen. Hruska). Similarly, the Conference Report describes the Senate bill as merely eliminating "[t]echnical distinctions . . . on appeals by the United States," H. R. Conf. Rep. No. 91–1768, *supra,* at 21.[6]

---

[5] The bill provided that an appeal would lie "from a decision, judgment or order of a district court dismissing an indictment or information or terminating a prosecution in favor of a defendant as to one or more counts, except that no appeal shall lie from a judgment of acquittal." S. 3132.

[6] When the Conference bill was reported back to both Houses, its provision on appeals was described in cautious terms hardly appropriate to a proposal to go to the constitutional limits: in the Senate, as "authoriz[ing]

Interpreting legislative history is sometimes a perplexing and uncertain task. In this instance, however, the legislative history is absolutely clear: Congress was interested solely in expanding the Government's right to appeal from the dismissal of an indictment; it had no desire to allow appeals from acquittals and believed such appeals would be unconstitutional.

Since I am satisfied that Congress has not authorized the Government to appeal from a judgment of acquittal, the only question presented is whether such a judgment was entered in this case. The answer to that question, as the Court demonstrates, is perfectly clear. By virtue of Fed. Rule Crim. Proc. 29 (c), the mistrial did not terminate the judge's power to make a decision on the merits. His ruling, in substance as well as form, was therefore an acquittal.[7] For this reason, I concur in the Court's judgment.

MR. CHIEF JUSTICE BURGER, dissenting.

The order of acquittal in favor of respondents was entered by the District Judge after a mistrial had been declared due to a jury deadlock. Once the jury was dismissed, respondents

---

appeals in *certain* classes of criminal cases," 116 Cong. Rec. 42147 (1970) (remarks of Sen. McClellan) (emphasis added); in the House, as an amendment "to broaden and clarify the right of the Government to appeal dismissals of criminal cases," *id.*, at 42197 (remarks of Rep. Celler).

[7] As we pointed out in *United States* v. *Sanford*, 429 U. S. 14, the mistrial in that case was entirely different because the proceedings in the trial court terminated without any decision on the merits.

"The trial of respondents on the indictment terminated, not in their favor, but in a mistrial declared, *sua sponte*, by the District Court. Where the trial is terminated in this manner, the classical test for determining whether the defendants may be retried without violating the Double Jeopardy Clause is stated in Mr. Justice Story's opinion for this Court in *United States* v. *Perez,* 9 Wheat. 579, 580 (1824):

" 'We are of opinion, that the facts constitute no legal bar to a future trial. The prisoner has not been convicted or acquitted, and may again be put upon his defence. . . .' " *Id.*, at 15.

ceased to be in jeopardy in that proceeding; they could no longer be convicted except after undergoing a new trial. For a century and a half it has been accepted that a defendant may properly be reprosecuted after the declaration of such a mistrial, *United States* v. *Perez,* 9 Wheat. 579 (1824). Therefore the District Judge's ruling here was made "prior to a trial that the Government had a right to prosecute and that the defendant was required to defend." *United States* v. *Sanford,* 429 U. S. 14, 16 (1976).[1]

The present case cannot be distinguished from *Sanford* in constitutionally material respects. It is true that the District Judge here phrased his order as an acquittal rather than as a dismissal, and that the order was entered pursuant to a timely Rule 29 (c) motion. However, such mechanical niceties are not dispositive of whether retrial would expose defendants to double jeopardy; our Fifth Amendment inquiry should focus on the substance rather than the form of the proceedings below. In ruling on a motion for acquittal the District Judge must pass on the sufficiency, *not* on the weight, of the Government's case, *United States* v. *Isaacs,* 516 F. 2d 409, 410 (CA5), cert. denied, 423 U. S. 936 (1975); *United States* v. *Wooten,* 503 F. 2d 65, 66 (CA4 1974). "[T]he applicable standard is whether [the District Judge as a trier of fact]

---

[1] *Fong Foo* v. *United States,* 369 U. S. 141 (1962), on which the Court relies so heavily, is not in point. There the District Judge directed a verdict while the original trial was still in progress. Unlike the case before us, the jury there was still properly empaneled, and had not yet even begun to deliberate. Where the District Judge interrupts the trial process, important rights of the defendant may be jeopardized. The opportunity to try the case is frustrated so that the possibility of an acquittal from the originally empaneled jury is lost. No such rights are implicated where, as here, the original trial has ended when the jury cannot agree; at that point the defendant is already subject to a second trial. Thus, the timing of the District Court's order is not, as the Court suggests, an irrelevant technicality. A midtrial judgment of acquittal interrupts the trial process at a time when the defendant is constitutionally entitled to have it proceed to verdict.

*could,* not whether he *would,* find the accused guilty on the Government's evidence." *United States* v. *Consolidated Laundries Corp.,* 291 F. 2d 563, 574 (CA2 1961) (emphasis in original).

The District Judge's ruling is thus plainly one of law, not of fact; it could only exonerate, not convict, the defendant. No legitimate interest of the defendant requires that this ruling be insulated from appellate review. On the other hand, barring the appeal jeopardizes the Government's substantial interest in presenting a legally sufficient case to the jury. The Court's holding today is thus wholly inconsistent with the intent of Rule 29 (c) as described by the drafters in the Advisory Committee Notes. In explaining the 1966 amendments to the Rule, the Notes expressly state: "No legitimate interest of the government is intended to be prejudiced by permitting the court to direct an acquittal on a post-verdict motion." 18 U. S. C. App., p. 4505. Surely the well-recognized right to reprosecute is such a "legitimate interest of the government," and should remain unaffected by the District Judge's order of acquittal.

Nor will the interest of clarity and consistency in the administration of the criminal justice system be served by today's holding. By hinging the outcome of this case on the timing of the post-trial motion and the label on the order, the Court is elevating form over substance and undermining the theoretical framework established by the *Wilson-Jenkins-Serfass* trilogy [2] of two Terms ago and the *Sanford* and *United States* v. *Morrison,* 429 U. S. 1 (1976), decisions earlier this Term. All litigants in our criminal courts—Government and defendants alike—are harmed by the uncertainty thus created. For these reasons, I cannot join the Court's holding and I respectfully dissent.

---

[2] *United States* v. *Wilson,* 420 U. S. 332 (1975); *United States* v. *Jenkins,* 420 U. S. 358 (1975); *Serfass* v. *United States,* 420 U. S. 377 (1975).