[No. 2265–2.   Division Two.   October 31, 1978.]

THE STATE OF WASHINGTON, *Appellant,* v. CURTIS L. BUNDY, JR., *Respondent.*

698

*Curtis M. Janhunen, Prosecuting Attorney,* for appellant.

*Michael Misner,* for respondent.

SOULE, J.—Defendant was charged with a violation of RCW 69.50.403(a)(3)(iv)[1] by an information alleging

> That he, the said Curtis L. Bundy, in Grays Harbor County, state of Washington, on or about the 5th day of August, 1975, did wilfully, unlawfully, and feloniously attempt to obtain a controlled substance by the use of a false name or the giving of a false address.

The State appeals from an order of dismissal entered February 6, 1976. We dismiss the appeal.

At the trial, evidence was produced that the defendant had, on August 5, 1975, presented a pharmacist with a prescription for Preludin Endurettes, a Class II controlled substance. The prescription order was on the form of Dr. C. Timothy Smith issued to a patient named Ted Coddington whose residence was given as 145 East Spruce St., Montesano, Washington. The prescription was dated August 5, 1975.

Because of past information received from the Aberdeen police, the pharmacist was suspicious of the name Coddington. She called the police who arrived within a very few

---

[1]RCW 69.50.403(a)(3)(iv) reads:

"Prohibited acts C—Penalties. (a) It is unlawful for any person knowingly or intentionally:

". . .

"(3) To obtain or attempt to obtain a controlled substance, or procure or attempt to procure the administration of a controlled substance, . . . (iv) by the use of a false name or the giving of a false address."

minutes. On seeing the police, defendant attempted to leave the pharmacy, but was arrested and the prescription form was turned over to the arresting officers.

Lieutenant Gerald Chancellor of the Aberdeen Police Department, testified that he knew Ted Coddington and knew that Coddington was in California during the week preceding August 5, 1975. The witness also testified that his investigation revealed that there is no such address as 145 East Spruce St., Montesano. He further testified that he had known the defendant from previous contacts and knew that for some time prior to August 5 the defendant had resided at 304 West Curtis, Apt. No. 1, Aberdeen, Washington.

After his arrest, defendant gave a written statement to the police which was admitted into evidence. In that statement, he confessed that he had used the name of Ted Coddington ever since he had been going to Dr. Smith, a period of about 4 months, and had also used the Spruce Street address, but the statement does not specify the street number on Spruce Street.

At the close of the State's evidence, defendant challenged the sufficiency of the evidence by moving to dismiss. Defendant argued that there was no proof that the name of Ted Coddington was not a legally assumed name rather than a "false" name, and that there was no testimony that the defendant gave a "false" name or a false address *for the purpose of obtaining a prescription.*

The State responded by urging that it had put on a prima facie case that, as to Curtis Bundy, the name of Ted Coddington was false and that the State should not be required to anticipate defensive matters. The court then denied the motion pending consideration of authorities cited by the parties. Thereupon, defendant elected to rest without putting on any additional evidence and the court took the matter under advisement.

The trial judge issued a memorandum opinion in which he expressed the view that under RCW 69.50.403(a)(3)(iv), an intent to perpetrate a fraud must be shown. He further

found that the evidence in this case disclosed untruth, but did not disclose an act designedly untrue and deceitful, or done with an intent to defraud. The closing sentence of the opinion states:

I find the statute to be constitutional, but the evidence insufficient to sustain a conviction. The motion to dismiss is granted.

That the insufficiency of the evidence was the basis for the motion for dismissal and the order granting it is made even more clear from the following excerpt from the order of February 6, 1976, in which the court stated:

[A]nd the defendant having made a motion to dismiss upon insufficiency of evidence to sustain a conviction, and the Court having heard the argument of counsel and in all things being fully advised, now, therefore, it is hereby

ORDERED, that the Information in the above entitled matter charging the defendant with the crime of Attempting to Obtain a Controlled Substance by the Use of a False Name or the Giving of a False Address is hereby dismissed with prejudice and the . . .

Two questions are presented by this appeal. One, did the trial court correctly construe RCW 69.50.403? Two, is the order of dismissal after the defense has rested, the legal equivalent of an acquittal so that an appeal by the State is barred by the double jeopardy clause of the fifth amendment to the United States Constitution[2] and article 1, section 9 of the Washington State Constitution?

Because our answer to the second question is yes, we find it unnecessary to consider the first. However, we will assume, for the purpose of this decision, that the trial court's construction of the statute was indeed erroneous.

■ The mere fact the final action was denominated an order of dismissal does not prevent it from being the legal equivalent of an acquittal. A trial judge's characterization of his own action cannot control the classification of that

[2]This provision is applicable to the several states by virtue of the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 793, 23 L. Ed. 2d 707, 89 S. Ct. 2056 (1969).

action. *United States v. Scott,* 437 U.S. 82, 97, 57 L. Ed. 2d 65, 98 S. Ct. 2187, 2196–97 (1978).

*Scott* further defines an acquittal as occurring when

"the ruling of the judge, whatever its label, actually represents a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense charged." *Martin Linen, supra,* at 571.[3]

In making its ruling, the court stated that the evidence was *insufficient* to sustain a conviction. To reach such a conclusion, the trial judge necessarily had to weigh the evidence, unless, perchance, he overlooked it, because the record contains several pieces of evidence which could have supported an inference of guilty intent.

The defendant's attempted flight when the police arrived at the pharmacy is evidence of consciousness of guilt and thus of guilt itself. *State v. Baxter,* 68 Wn.2d 416, 413 P.2d 638 (1966); *State v. Nichols,* 5 Wn. App. 657, 491 P.2d 677 (1971); 2 J. Wigmore, *Evidence* § 276, at 111 (3d ed. 1940). The effort to flee need be no more than a few steps taken on the approach of the police. *State v. Garcia,* 83 N.J. Super. 345, 199 A.2d 860 (1964).

The use of a false name by the defendant could also have been used to infer the guilty knowledge. *United States v. Sutton,* 446 F.2d 916 (9th Cir. 1971), *cert. denied,* 404 U.S. 1025, 30 L. Ed. 2d 675, 92 S. Ct. 699 (1972). 2 J. Wigmore, *Evidence, supra. See also State v. Miller,* 164 Wash. 441, 2 P.2d 738 (1931).

Moreover, the defendant's own written statement (admitted into evidence) asserted that he had at one time rented an apartment at the Spruce Street address. However, Lt. Chancellor testified that no such address existed in Montesano. Certainly, evidence of the use of such a false address in connection with the use of a false name, would support, though not compel, an inference of guilty knowledge, *i.e.,* an intent to defraud.

[3]*United States v. Martin Linen Supply Co.,* 430 U.S. 564, 51 L. Ed. 2d 642, 97 S. Ct. 1349 (1977).

Such an inference of guilty knowledge was particularly permissible when considered with the additional testimony of the pharmacist who stated that when she was presented with the prescription order, she *verified* the address with the defendant. She asked him if it was a current address. Thus, although the address conceivably, under defendant's theory, could have been his legitimate address of record 4 months previously when he first visited Dr. Smith, it clearly was not his address on August 5. Even under the trial court's interpretation of RCW 69.50.403(a)(3)(iv), defendant's statement to the pharmacist that it was correct was a false statement at that time which would support an inference that it was made intentionally for the purpose of obtaining the drugs through deceitful means and in violation of the law.

These pieces of evidence, if viewed in the light most favorable to the State,[4] would support a finding of the intent to defraud which the trial court felt was required by the statute and would have been sufficient to make out a prima facie case for the prosecution even under the court's interpretation of the statute. As a result, the trial court's order of dismissal could only have been based upon a factual resolution of the merits of the case.

Since a factual resolution was made, the order of dismissal is the legal equivalent of an acquittal and the double jeopardy clause of the United States Constitution and also of the Constitution of the State of Washington bars this appeal under the authority not only of *United States v. Scott, supra,* but of *State v. Ridgley,* 70 Wn.2d 555, 424 P.2d 632 (1967).

It makes no difference that the ruling of the court may have resulted from an erroneous interpretation of governing legal principles. Such an error affects the accuracy of a determination, but it does not alter its essential character

---

[4]A challenge to the sufficiency of the evidence requires that all evidence and reasonable inferences therefrom be interpreted most strongly against the defendant and most favorably to the plaintiff. *State v. Reynolds,* 51 Wn.2d 830, 322 P.2d 356 (1958).

as a judgment of acquittal. *United States v. Scott, supra; Sanabria v. United States,* 437 U.S. 54, 57 L. Ed. 2d 43, 98 S. Ct. 2170 (1978).

The appeal is dismissed.

PEARSON, C.J., concurs.

REED, J. (dissenting)—I cannot agree with the conclusion reached by the majority and respectfully dissent.

Before setting forth the reasons for my disagreement, I would note that the issue of double jeopardy which has now become dispositive of this appeal was not raised by the defendant. Rather, as was the case in *State v. Jubie,* 15 Wn. App. 881, 552 P.2d 196 (1976), this court raised the issue sua sponte. Unlike *Jubie,* however, in the instant case additional briefs were requested and considered. Interestingly enough, defendant's supplemental brief cites only *Jubie* and argues that its holding should be controlling here. In the interim the United States Supreme Court decided the several double jeopardy cases[5] which the majority rely upon in part to support a dismissal of the State's appeal.

The majority has found it unnecessary to discuss whether intent to defraud is an element of the crime defined by RCW 69.50.403; rather, and I think correctly, they assume that such an intent need not be proved and advance to a resolution of the double jeopardy issue. For purposes of this dissent I, too, will assume that intent to defraud is not a necessary element of the malum prohibitum crime created by RCW 69.50.403.[6]

---

[5] *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 51 L. Ed. 2d 642, 97 S. Ct. 1349 (1977); *Sanabria v. United States,* 437 U.S. 54, 57 L. Ed. 2d 43, 98 S. Ct. 2170 (1978); *United States v. Scott,* 437 U.S. 82, 57 L. Ed. 2d 65, 98 S. Ct. 2187 (1978).

[6] The trial judge appears to recognize that no "scienter" is required in order to convict under the statute when he says at one point,

Well if the state doesn't have the power under the so-called police power to prescribe the unlawfulness of a person "knowingly or intentionally" obtaining

I have no particular quarrel with the United States Supreme Court cases cited, but I do not think they mandate the result reached by the majority. I simply do not believe that the words "the defense rests" or their equivalent possess any magical qualities which convert a trial judge's dismissal based upon an erroneous interpretation of the law into an acquittal or finding of not guilty on the merits. In *Lee v. United States*, 432 U.S. 23, 53 L. Ed. 2d 80, 97 S. Ct. 2141 (1977), a tardy defense motion to dismiss the information on the ground it did not allege specific intent as required by an Indiana statute was taken under advisement by the district court. After the government presented its case, the defendant moved for a judgment of acquittal on the ground the prosecution had failed to establish the required intent. Being careful to distinguish this motion from the earlier motion on which it had "reserved the right to do some research," the trial court weighed the government's evidence and found it sufficient to convict. *Lee v. United States, supra* at 26. Nevertheless, after the defense elected to present no evidence, the trial court returned to the initial motion to dismiss; the motion was granted. Subsequently, the defendant was again charged with the same crime; he was convicted and appealed. The conviction was affirmed by the Court of Appeals and on certiorari the Supreme Court rejected his double jeopardy claim, holding that the trial court's order

a prescription drug by the use of a false name or the giving of a false address, I don't know what they can prescribe.

And, in his memorandum opinion he states,

This particular crime did not exist at common law, and is thus mala prohibata, an act deemed wrongful solely due to its prohibition.

Yet, against this backdrop, the trial judge proceeds to draw an inconsistent conclusion when he concludes his memorandum by stating,

The plaintiff's evidence indicates no more than the use of a name other than the defendant's true name, and the only name under which the doctor knew and treated him. The necessity to detect illegal activity as set forth in Chapter 69.50 RCW is not enough to justify a conviction for an otherwise innocent act, which is all that the evidence shows.

I find the statute to be constitutional, but the evidence insufficient to sustain a conviction. The motion to dismiss is granted.

of dismissal was functionally indistinguishable from a declaration of mistrial. Clearly, the Supreme Court saw no impediment to a review of the dismissal in the fact that the defense offered no evidence and the trial judge weighed the evidence before dismissing rather than acquitting.

Nor does the trial judge's use of the term "insufficient evidence" in this case mean he found the State had failed by the weight of the evidence to prove the necessary facts for a conviction under the statute. On the contrary, it is clear from his colloquy with counsel and from his memorandum decision that he was saying in effect: (1) given the undisputed fact defendant used a false name and address to obtain a prescription from a physician and, (2) given the undisputed fact that defendant used the prescription in an attempt to obtain drugs from a pharmacist, (3) he cannot be guilty because the State has offered no evidence of an intent to defraud. In my view, the erroneous granting of a challenge to the sufficiency of the evidence, based upon a misconception as to the elements of the offense, is far removed from a situation where evidence is erroneously *excluded* and this results in a failure of proof when the case is submitted on the merits and the evidence actually before the court is weighed *for its convincing effect. Cf. United States v. Scott,* 437 U.S. 82, 57 L. Ed. 2d 65, 98 S. Ct. 2187 (1978) and *Sanabria v. United States,* 437 U.S. 54, 57 L. Ed. 2d 43, 98 S. Ct. 2170 (1978).

My reading of the record has convinced me that when the trial judge accepted all of the State's evidence as true and then proceeded to read into the statute an element which the State was not required to prove, this could in no sense be described as a "weighing" of the evidence. Rather, to use a far-fetched example, it is the same as if the trial judge had entertained the erroneous belief that the crime must have been committed on a Wednesday.

It is evident from the record that the trial judge denied defendant's challenge pro forma in order to (1) permit the trial to proceed, and (2) give the judge an opportunity to examine the authorities cited to him. He could not have

expected that defendant would elect to offer no evidence. I cannot agree with the majority's holding that defendant's somewhat surprising trial tactic trapped the trial court, and had the effect of making any subsequent ruling in favor of the defendant equivalent to a finding of not guilty. That the matter was not being submitted on the merits is evident from the fact that defendant, after resting, did not move for an acquittal and from the fact that neither the defendant nor the State offered any argument. *Cf. State v. Ridgley,* 70 Wn.2d 555, 424 P.2d 632 (1967). Clearly, both counsel were aware at that point that the judge was returning to his consideration of the original motion as in *Lee v. United States, supra.*

I respectfully submit the majority errs when it assumes the trial judge considered the inferences arising from attempted flight and other evidence which *might* have supported a finding of fraudulent intent. There is nothing in the record to support this assumption; on the contrary, the memorandum opinion makes it clear the trial judge simply read into the statute a requirement that the State offer some proof of a fraudulent intent and granted a dismissal because he believed the State made no effort to offer such evidence. This was tantamount to a finding the information was deficient because it failed to charge fraudulent intent. *Cf. Lee v. United States, supra.*

Finally, the case before us is easily distinguishable from *Jubie,* where the trial judge, guided by correct precedent, *State v. Walker,* 82 Wn.2d 851, 514 P.2d 919 (1973), actually weighed the evidence and found it insufficient to establish a necessary true element of the crime charged, *i.e.,* that Jubie acted as the agent of a seller of drugs. This reasoning is consistent with the holding of *Ridgley* in which our Supreme Court carefully distinguished between acquittals after a trial on the merits and the erroneous dismissal of a criminal case as a matter of law. *See State v. Brunn,* 22 Wn.2d 120, 154 P.2d 826, 157 A.L.R. 1049 (1945).

In conclusion I submit that neither *Ridgley* nor *Jubie* nor any of the United States Supreme Court cases alluded to

by the majority requires dismissal of the State's appeal on double jeopardy grounds.[7] I would entertain the appeal and

[7]The United States Supreme Court cases must be read in light of the federal statutes and rules which a defendant may utilize to gain a favorable termination of the proceedings against him. *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 567, 51 L. Ed. 2d 642, 97 S. Ct. 1349 (1977) involves the interplay between 18 USC § 3731 [18 USCS § 3731] which provides that an appeal by the United States in a criminal case "shall lie to a court of appeals from a . . . judgment . . . of a district court dismissing an indictment . . ., except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution." (Footnote omitted.)

FRCP 29 provides:

"Motion for Judgment of Acquittal

"(a) MOTION BEFORE SUBMISSION TO JURY. *Motions for directed verdict are abolished and motions for judgment of acquittal shall be used in their place.* The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses. If a defendant's motion for judgment of acquittal at the close of the evidence offered by the government is not granted, the defendant may offer evidence without having reserved the right.

"(b) RESERVATION OF DECISION ON MOTION. If a motion for judgment of acquittal is made at the close of all the evidence, the court may reserve decision on the motion, submit the case to the jury and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict.

"(c) MOTION AFTER DISCHARGE OF JURY. If the jury returns a verdict of guilty or is discharged without having returned a verdict, a motion for judgment of acquittal may be made or renewed within 7 days after the jury is discharged or within such further time as the court may fix during the 7-day period. If a verdict of guilty is returned the court may on such motion set aside the verdict and enter judgment of acquittal. If no verdict is returned the court may enter judgment of acquittal. It shall not be necessary to the making of such a motion that a similar motion has been made prior to the submission of the case to the jury."

(Italics mine.) *United States v. Martin Linen Supply Co., supra* at 566 n.2.

Procedure in the state of Washington is governed by RAP 2.2(b)(1), which provides as follows:

**(b) Appeal by State or a Local Government in Criminal Case.** The State or a local government may appeal in a criminal case only from the following superior court decisions and only if the appeal will not place the defendant in double jeopardy:

(1) *Final Decision, Except Not Guilty.* A decision which in effect abates, discontinues, or determines the case other than by a judgment or verdict of not guilty, including but not limited to a decision setting aside, quashing, or dismissing an indictment or information.

708

address the sole issue discussed by the State and the defendant in their initial briefs.

Reconsideration denied December 4, 1978.