176 P.3d 616 (2008)
STATE of Washington, Appellant,
v.
Jesse Alan McREYNOLDS, Respondent and Cross-Appellant.
No. 24741-4-III.
Court of Appeals of Washington, Division 3.
February 5, 2008.
*617 Kevin Gregory Eilmes; Prosecuting Attorney's Office, Yakima, WA, for Appellant.
Reed Charles Pell, Attorney at Law, Yakima, WA, for Respondent/Cross-Appellant.
SCHULTHEIS, J.
¶ 1 Jesse McReynolds was charged with one count of luring a child. RCW 9A.40.090. The superior court dismissed the case after the State presented its case in chief. The trial court entered an order stating that the dismissal was tantamount to a Knapstad[1] order. The State appeals the dismissal of the case, Mr. McReynolds cross-appeals the characterization of the dismissal as a Knapstad order. We conclude that the dismissal was appropriate and tantamount to an acquittal. We therefore affirm in part and reverse in part.
¶ 2 At about 5:30 p.m. on September 1, 2005, 11-year-old L.S. was walking home from volleyball practice at her school in Union Gap, Washington. She first saw Jesse McReynolds, whom she did not know, at a stop sign at Third and Pine Streets when he stopped to wait for her to cross so that he could turn left onto Pine Street.
¶ 3 After turning, Mr. McReynolds drove up to L.S. and slowed down. When Mr. McReynolds was three to four feet from L.S., who was walking on the gravel shoulder, he signaled to L.S. to come over. She glared at him because she was tired and hungry and in a bad mood from volleyball practice. L.S. did not feel that Mr. McReynolds was attempting to prevent her from going home when he motioned to her; she just ignored him because she did not feel well and she wanted to get home.
¶ 4 Mr. McReynolds drove to the end of the block and stopped at the next stop sign, at Second and Pine Streets. L.S. became frightened when she saw him at this stop sign and thought he was waiting for her. When she passed him at the stop sign, she ran the rest of the way to her house on Pine and First Streets. L.S, did not look at Mr. McReynolds after he first signaled to her. She heard his truck go down the street as she ran into her yard and she saw him turn on First Street.
¶ 5 L.S. ran into the house, crying hysterically, and told her mother that she was being followed. L.S.'s mother called police. Union Gap Police Officer Robert Almeida located Mr. McReynolds from L.S.'s description of his truck. L.S. then personally identified Mr. McReynolds and his vehicle at the spot where he was detained.
¶ 6 Mr. McReynolds was charged with one count of luring a child. A trial was held on November 2 and 3, 2005. In a pretrial motion, the trial court suppressed evidence of a knife that was found in Mr. McReynolds' truck.
¶ 7 Near the end of the State's case in chief the State's last witness, Officer Almeida, Was asked to identify the contents of Mr. McReynolds' truck. After describing several items, he stated, "There were some other items in there that I've been told that I'm not to mention and." Report of Proceedings (RP) at 60-61. Defense counsel asked that the, jury be excused. The court released the jury for lunch.
¶ 8 Mr. McReynolds moved for a mistrial. The State objected, noting that the witness did not identify the suppressed evidence. Mr. MeReynolds then stated that he wished to reserve his motion for mistrial. He suggested that the State finish up with its last witness and then the defense would move for dismissal, and, if denied, the defense would move for a mistrial. The trial judge stated *618 that the jury was incurably tainted by the mention of evidence withheld from it and stated, "I think I am compelled to grant a mistrial today." RP at 62. The motion for mistrial was granted.
¶ 9 Immediately before the lunch recess, the parties briefly discussed speedy trial, redocketing the case, and bail. The judge then mentioned that he wanted to "flush[] out" some issues during the lunch recess that he wished to later discuss with counsel. RP at 63.
¶ 10 After the lunch recess, the trial judge asked the parties to present argument on Mr. McReynolds' motion to dismiss. Defense counsel stated that he wanted to make the motion at the conclusion of the State's case, but considering the procedural posture of the casethat the State had no more evidence to present, but had not yet rested he asked the court to dismiss the case under CrR 8.3(b), the only motion he thought might apply. Defense counsel again suggested that the State present any further evidence it might have and then allow the court to rule on the motion for dismissal for insufficient evidence.
¶ 11 The court asked the State for its argument regarding dismissal. The State argued that because the trial court declared a mistrial, it could not thereafter dismiss for insufficient evidence. The State then went on to address retrial.
¶ 12 The court again asked for the State's argument on the motion to dismiss, explaining that in order to obtain a conviction for luring, according to State v. Dana, 84 Wash. App. 166, 926 P.2d 344 (1996), "the State has to show some additional conduct or action that constitutes enticement or attempted enticement in order to prove the case. . . . `Luring "requires something more than an invitation." An enticement by words or conduct must accompany an invitation.'" RP at 66-67 (quoting 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 39.41 cmt. (Supp.2005)). The judge stated that he had heard all of the evidence, and he wanted the State to identify the evidence that showed enticement or attempted enticement.
¶ 13 The State argued that it had evidence that Mr. McReynolds had followed the girl. The trial court informed the State that the act of following does not constitute enticement, and that there was no evidence of any words or gestures to engage the girl, beyond the initial invitation, that would constitute enticement. The judge recognized that the testimony of the State's last witness was curtailed by the declaration of a mistrial, but stated that he did not believe that Officer Almeida, an after-the-fact witness, could add to the enticement issue. In order to preserve the case, the judge proposed that the State make an offer of proof on evidence of enticement. But the State continued to argue that the act of following was sufficient, and presented no additional facts.
¶ 14 The trial court ruled:
I said it had to be conduct or action that constituted enticement, that's my interpretation of the law. So for that reason, because I'm not aware of any other evidence that the State would put on or that there was something that Officer Almeida might have testified to, I don't find that there was something more than an invitation in this case. And I think under the facts that have been presented, it's appropriate for the reasons that I've already stated to dismiss this case.
RP at 70-71.
¶ 15 The court entered a written order of dismissal and released the defendant on the charge. The State appealed.
¶ 16 In a criminal proceeding, "a defendant may challenge the sufficiency of the evidence (a) before trial, (b) at the end of the State's case in chief, (c) at the end of all the evidence, (d) after verdict, or (e) on appeal." State v. Jackson, 82 Wash.App. 594, 607-08, 918 P.2d 945 (1996) (footnotes omitted). The evidence is reviewed using the most complete factual basis available at the point in time the sufficiency challenge is raised. Id. at 608-09, 918 P.2d 945. At each juncture, the court considers the evidence and all reasonable inferences from that evidence in the light most favorable to the State. Id. at 608, 918 P.2d 945. The inquiry is whether any rational trier of fact could *619 have found the essential elements of the crime beyond a reasonable doubt. State v. Green, 94 Wash.2d 216, 221, 616 P.2d 628 (1980). The elements of the crime may be established by either direct or circumstantial evidence. State v. Thompson, 88 Wash.2d 13, 16, 558 P.2d 202 (1977).
¶ 17 The State argues that it presented sufficient evidence upon which to convict Mr. McReynolds. We disagree.
¶ 18 A person commits the crime of luring if the person:
(1)(a) Orders, lures, or attempts to lure a minor . . . into a motor vehicle;
(b) Does not have the consent of the minor's parent or guardian . . .; and
(c) Is unknown to the child.
RCW 9A.40.090.
¶ 19 The terms "lure" and "luring" are not defined in the statutory scheme. Division One of this court, when addressing a vagueness challenge, used dictionary terms to conclude that a commonly understood use of "lure" is to "entice." Dana, 84 Wash.App. at 172, 926 P.2d 344. The Dana court continued: "[T]he connotation of the word `lure' amplifies that meaning by implying that one who lures another leads that person into a course of action that is wrong or foolish under the circumstances." Id. Therefore, under Dana, luring is more than an invitation alone; enticement, by words or conduct, must accompany the invitation. Id. at 176, 926 P.2d 344.
¶ 20 Here, Mr. McReynolds signaled to L.S. for her to come over to him. This gesture is insufficient in and of itself to prove that Mr. McReynolds was trying to get. L.S. into his truck. But he also braked at the stop sign and continued on the same street as L.S. There is no evidence that Mr. McReynolds said anything at all or made any gestures beyond the initial signaling. And L.S. never looked at Mr. McReynolds again after he made the first gesture. There is insufficient evidence to constitute luring in this case.
¶ 21 We now address Mr. McReynolds' cross-appeal. He argues that the trial court mischaracterized its order of dismissal, We agree.
¶ 22 At the direction of this court (on the court's motion regarding appealability), the trial court entered conclusions of law, clarifying the basis for the dismissal. The trial court concluded, after hearing the State's evidence and there being no additional offer of proof, that there was insufficient evidence to establish a prima facie case of luring under Dana. The court also concluded that although it ordered dismissal after the State's case in chief and after the State had an opportunity for an offer of proof, because the trial court had orally decided that a mistrial was appropriate under the circumstances, "the dismissal was tantamount to one entered pursuant to the summary procedure set forth in State v. Knapstacl, 107 Wash.2d 346, 729 P.2d 48 (1986)." Clerk's Papers at 8. Our commissioner then ruled that a Knapstad motion is appealable by right and allowed the case to proceed. Mr. McReynolds cross-appealed the trial court's characterization of its ruling as a Knapstad order.
¶ 23 The State argues that the trial court's classification of its ruling as a Knapstad order is dispositive of the issue. But a trial court's denomination of its own order terminating a prosecution is not conclusive as to its being either a dismissal or the legal equivalent of an acquittal. State v. Bundy, 21 Wash.App. 697, 700-01, 587 P.2d 562 (1978) (citing United States v. Scott, 437 U.S. 82, 97, 98 S.Ct. 2187, 2196-97, 57 L.Ed.2d 65 (1978)).
¶ 24 An acquittal occurs when "`"the ruling of the judge, whatever its label, actually represents a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense charged."'" Bundy, 21 Wash.App. at 701, 587 P.2d 562 (alteration in original) (quoting Scott, 437 U.S. at 97, 98 S.Ct. 2187 (quoting United States v. Martin Linen Supply Co., 430 U.S. 564, 571, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977))). That is what occurred here.
¶ 25 The trial court concluded the trial with a dismissal after the end of the State's case in chief. A written order was entered granting the motion to dismiss and *620 releasing Mr. McReynolds from custody on the charge. That constitutes an acquittal. A retrial of a defendant whose initial prosecution was dismissed for insufficient evidence during his jury trial at the close of the State's case violates the constitutional double jeopardy prohibition. State v. Matuszewski, 30 Wash.App. 714, 717-18, 637 P.2d 994 (1981). It is therefore irrelevant that, before ruling on Mr. McReynolds' motion to dismiss, the trial court orally declared a mistrial. The dismissal was made when the case was in the proper posture for acquittal. And no written order on mistrial was entered. See State v. Kull, 155 Wash.2d 80, 88, 118 P.3d 307 (2005) (noting that an oral decision is only considered if it clarifies the written order, not when it contradicts the written order).
¶ 26 The record shows that the trial court entered an order of dismissal with every intention of ending the prosecution on this charge. It was therefore an acquittal. State v. Motycka, 21 Wash.App. 798, 802, 586 P.2d 913 (1978). To hold otherwise would elevate form over substance. Finally, it is immaterial whether a dismissal is entered rather than a formal directed verdict; the legal effect is the same. State v. Dye, 81 Wash. 388, 391, 142 P. 873 (1914). "The dispositive question is whether the order of dismissal was tantamount to a `judgment of not guilty.'" State v. Jubie, 15 Wash.App. 881, 885, 552 P.2d 196 (1976). There was such a judgment of not guilty here.
¶ 27 Affirmed in part, reversed in part.
WE CONCUR: SWEENEY, C.J., and KULIK, J.
NOTES
[1] State v. Knapstad, 107 Wash.2d 346, 729 P.2d 48 (1986).