**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Jose Manuel FERNANDEZ–TOLEDO, Lazara Esther Rodriguez-Sensat, Rafael Enrique Franjul, Defendants-Appellees,**

**Carlos Santiago Lahera-Gonzalez, Defendant-Appellee, Cross-Appellant.**

No. 83–5834.

United States Court of Appeals,
Eleventh Circuit.

July 9, 1984.

Stanley Marcus, U.S. Atty., Linda Collins Hertz, Jon May, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellant.

Edward R. Shohat, Benedict P. Kuehne, Neal R. Sonnett, Jacqueline Shapiro Budney, Bierman, Sonnett, Shohat & Sale, P.A., Miami, Fla., for defendants-appellees.

John Lazarus, Miami, Fla., Ron Dion, North Miami Beach, Fla., Oscar Rodriguez, Coral Gables, Fla., for Gonzalez.

---

* Honorable Irving L. Goldberg, U.S. Circuit Judge for the Fifth Circuit, sitting by designa-

Before TJOFLAT and CLARK, Circuit Judges, and GOLDBERG *, Senior Circuit Judge.

TJOFLAT, Circuit Judge:

After Federal Bureau of Investigation agents found evidence that the four appellees, Fernandez-Toledo, Rodriguez-Sensat, Lahera-Gonzalez and Franjul, were engaging in drug trafficking and racketeering, the four were arrested and subsequently indicted. A magistrate set bail for Rodriguez and Lahera and denied bail to Fernandez and Franjul. The district judge reviewing the bail determination set bail for Fernandez and Franjul and lowered the amount of bail the magistrate had set for Rodriguez and Lahera. The government, fearing that Fernandez and Franjul would kill a government witness if they were released, sought to appeal the district judge's order setting bail to this court, or, alternatively, petition this court to issue a writ of mandamus to the district judge compelling him to exercise his discretion within the proper legal bounds. We find no jurisdiction over the government's appeal because it relates to an interlocutory matter that the Congress has not authorized this court to hear. We do have jurisdiction, however, of the mandamus action under 28 U.S.C. § 1651 (1982). We issue the writ because we find the district judge to have erroneously limited the scope of his own discretion by his incorrect view of the controlling law.

I.

In September 1983, FBI agents obtained court authority to monitor electronically oral communications of Fernandez, Rodriguez, and Lahera at the Fernandez Construction Company in Miami, Florida. At that time the FBI was using an informant, Moises Perez, a boat captain who allegedly had worked with the defendants to smuggle marijuana, to provide it information concerning the defendants' activities.

tion. ·

**914**

The FBI monitored the defendants' conversations with little incident until November 19, 1983. On that date, the agents heard the following conversation at which Fernandez, Rodriguez, Franjul, and Lahera were present. Fernandez and Franjul decided that an informant had penetrated their organization. After some discussion they concluded that Perez was the informant and that they needed to eliminate him. Fernandez described Perez to Franjul and told Franjul where he might be located. Franjul said that they would take Perez to a farm and "tie him up with copper wire because the plastic in the copper wire makes a good fire." After more general conversation regarding the damage the informant could do if left alive, Fernandez stated that "we have to eliminate him quickly" and decided to send "Muzongo" and "Tiffi" to kidnap Perez, take him to "the farm" and kill him.

This conversation was of more significance in light of earlier intercepted conversations showing the likelihood that Fernandez would carry out such threats and the consistency of his modus operandi. Fernandez had stated that his brother had been kidnapped and murdered and that in revenge he had kidnapped and murdered thirty people and burned their bodies because "a dead person found is a dead person investigated, a dead person not found is a dead person not investigated."

The FBI, in view of the danger to Perez, terminated its investigation and obtained warrants for the arrest of the defendants in the early morning of November 20. When FBI agents arrested Franjul, they found an automatic pistol at his residence; Franjul also admitted keeping a 12-gauge shotgun there. Fernandez, when the FBI arrested him, was carrying in his pocket two pieces of paper showing Perez' business address and several telephone numbers for Perez. Fernandez had two handguns and a shotgun in his office, a handgun in his car, and a machine guntype weapon near his garage.

On November 21, the magistrate held a bail hearing regarding Franjul, Rodriguez and Lahera. After hearing testimony from both sides, including testimony of FBI agents regarding the monitored conversations, the magistrate ordered Franjul held without bail, but released Rodriguez and Lahera on corporate surety bonds of $500,000 and $350,000, respectively. On November 23, the magistrate held a second bail hearing regarding Fernandez and Franjul. After hearing extensive testimony and argument, he refused to admit either of the men to bail because they presented too great a threat to the integrity of the trial process.

The four defendants appealed the bail decisions to the district court. They claimed first that the monitored conversations should be suppressed since the government had not given them ten days notice that the evidence would be used against them at the bail hearing.[1] They next claimed that bond should be set for Fernandez and Franjul and lowered for Rodriguez and Lahera.

The judge heard argument of counsel regarding these issues. He reserved ruling on the suppression issue, but reached a decision regarding bail. He first concluded that under the eighth amendment all defendants were entitled to bail and the question before him was what bail was reasonable under the circumstances. He then set bail for Fernandez and Franjul, and reduced the amount of bail required for Rodriguez and Lahera, solely on the basis of counsel's argument.[2]

---

1. The ten day notice requirement, found in 18 U.S.C. § 2518(9) (1982), applies only to intercepted communications.

2. The court set bond for Fernandez in the amount of $1,000,000 personal surety and $750,000 corporate surety, with a *Nebbia* (*United States v. Nebbia,* 357 F.2d 303 (2d Cir.1966)) hearing. It set bond for Franjul in the amount of $1,000,000 personal surety and $500,000 corporate surety, with a *Nebbia* hearing. The court reduced Rodriguez' bail to $200,000 personal surety and $75,000 corporate surety, and reduced Lahera's bond to $200,000 corporate surety, also with *Nebbia* hearings. The court imposed other restrictions on the four defendants, directing them to report daily for pretrial services, to have no contact with likely government

## II.

■ We turn first to whether we have jurisdiction over an appeal by the government from an order of a district judge setting bail. We begin with the basic principle that "in the federal jurisprudence, at least, appeals by the Government in criminal cases are something unusual, exceptional, not favored." *Carroll v. United States*, 354 U.S. 394, 400, 77 S.Ct. 1332, 1336, 1 L.Ed.2d 1442 (1957). Accordingly, the United States cannot appeal in a criminal case without express congressional authorization. *United States v. Hitchmon*, 602 F.2d 689, 692 (5th Cir.1979).[3] A government appeal from a bail determination is nowhere so authorized.

The legislative scheme for bail regulation has been set forth in the Bail Reform Act of 1966. 18 U.S.C. § 3141–3148 (1982).

That act, comprehensive in nature, gives a judicial officer the discretionary authority, guided by several express considerations, to determine bail and, on application by either side, to amend his determination. *Id.* at section 3146.[4] The statute then provides for an appeal by the defendant to a judge having original jurisdiction over the offense. *Id.* at section 3147(a).[5] Then, a defendant may appeal that judge's determination to the appropriate appellate court. *Id.* at section 3147(b). Thus, the statute contains no authorization for a government appeal of bail conditions. Indeed, by its comprehensive structure and its clear provision for appeals by the defendant, it implicitly rejects such government appeal.[6] We do not end our analysis with this point, however. It is conceivable that some other

---

witnesses, to stay in their homes from 6:00 p.m. until 8:00 a.m. daily, to remain within Dade County, and to surrender their passports.

**3.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

**4.** Section 3146(a) provides that a person charged with a non-capital offense "shall ... be ordered released ... on his personal recognizance or upon the execution of an unsecured appearance bond ... unless the [judicial] officer [before which he appears] determines, in the exercise of his discretion, that such a release will not reasonably assure the appearance of the person as required." Upon such a determination the officer may impose one or more other conditions which will reasonably assure the accused's appearance.

Section 3146(b) guides the officer's discretion further:

In determining which conditions of release will reasonably assure appearance, the judicial officer shall, on the basis of available information, take into account the nature and circumstances of the offense charged, the weight of the evidence against the accused, the accused's family ties, employment, financial resources, character and mental condition, the length of his residence in the community, his record of convictions, and his record of appearance at court proceedings or of flight to avoid prosecution or failure to appear at court proceedings.

Section 3146(d) provides that the accused may seek review of the conditions by the officer that imposed them. Section 1346(e) provides that

the officer "may at any time amend his order to impose additional or different conditions of release."

**5.** Section 3147 provides:

(a) A person who is detained, or whose release on a condition requiring him to return to custody after specified hours is continued, after review of his application pursuant to section 3146(d) or section 3146(e) by a judicial officer, other than a judge of the court having original jurisdiction over the offense with which he is charged or a judge of a United States court of appeals or a Justice of the Supreme Court, may move the court having original jurisdiction over the offense with which he is charged to amend the order. Said motion shall be determined promptly.

(b) In any case in which a person is detained after (1) a court denies a motion under subsection (a) to amend an order imposing conditions of release, or (2) conditions of release have been imposed or amended by a judge of the court having original jurisdiction over the offense charged, an appeal may be taken to the court having appellate jurisdiction over such court. Any order so appealed shall be affirmed if it is supported by the proceedings below. If the order is not so supported, the court may remand the case for a further hearing, or may, with or without additional evidence, order the person released pursuant to section 3146(a). The appeal shall be determined promptly.

**6.** The parties point to no legislative history indicating that the government has a right to appeal a bail determination under section 3147 or under any other provision of the Bail Reform Act.

statute or policy might authorize government appeals of bail determinations.

The government argues that two statutes, 18 U.S.C. § 3731 (1982) (authorizing certain government appeals in criminal cases) and 28 U.S.C. § 1291 (1982) (authorizing appeal of certain interlocutory orders possessing the requisite degree of finality under *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), give the government a right to appeal this bail determination. The extent to which these statutes authorize government appeals in criminal cases is not crystal clear. We cannot agree, however, that the statutes, considered together or separately, grant the government the right to appeal in this case.

Section 3731 describes two types of situations in which the government may appeal. The first is a dismissal of an indictment or information; the second is a pretrial decision to suppress evidence. While the statute was originally strictly construed to prohibit government appeals not expressly stated therein, *see United States v. Sisson*, 399 U.S. 267, 90 S.Ct. 2117, 26 L.Ed.2d 608 (1970), it was amended in 1971 in part to insert a provision that the applicability of the section should be liberally construed to effectuate its purpose. The purpose, the Supreme Court has noted, was "to remove all statutory barriers to Government appeals and to allow appeals wherever the Constitution would permit." *United States v. Wilson*, 420 U.S. 332, 337, 95 S.Ct. 1013, 1019, 43 L.Ed.2d 232 (1975).

Through the "liberal construction" provision the High Court has extended the government's section 3731 right of appeal beyond the explicit language of the statute. However, the Court has extended the section only to orders having the effect of terminating the litigation. In *Wilson*, the Court reviewed a post-verdict dismissal of

an indictment. The defendant-appellee argued that such an order was in fact a judgment of acquittal not appealable under section 3731. The Court found the order to be reviewable on government appeal, concluding "that when a judge rules in favor of the defendant after a verdict of guilty has been entered by the trier of fact, the Government may appeal from that ruling without running afoul of the Double Jeopardy Clause."

In *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977), the Court considered a government appeal from a judgment of acquittal entered by a district judge on the defendant's motion after he discharged a "hopelessly deadlocked" jury. *Id.* at 565–6, 97 S.Ct. at 1351–2. The Court noted that, while section 3731 "authorizes appeal from a district court 'dismiss[al]' rather than 'acquittal,' it is now established that the form of the ruling is not dispositive of appealability in a statutory sense." *Id.* at 567 n. 4, 97 S.Ct. at 1352 n. 4. The Court pointed out that in that case the acquittal foreclosed retrial and thus barred appellate review under section 3731. *Id.* at 576, 97 S.Ct. at 1357.

Section 3731, then, has not been extended to authorize government appeal of an interlocutory order neither terminating the litigation nor suppressing evidence. It does not grant the government a right of appeal in this case.[7] The government argues, however, that Congress, in providing for liberal construction of that section, showed an intent for all government appeals to be viewed favorably. Accordingly, it states, we should be more favorably inclined toward its argument that section 1291 [8] authorizes its appeal than we would be if section 3731 did not exist. We find no reason to give the two statutes any synergistic effect. Section 3731 is simply not

---

**7.** We further note, in reaching this conclusion, that section 3731 was amended after the Bail Reform Act was passed. We find no legislative history showing any congressional intent to change or supplement the Bail Reform Act's provisions so to permit government appeals of bail orders.

**8.** Section 1291 provides:

**Final decisions of district courts**

The courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts. ...

relevant to this appeal from an order setting bail and does not affect our analysis of the government's right to appeal under section 1291. *See Carroll,* 354 U.S. at 403–4, 77 S.Ct. at 1338–9 (noting that in a few instances interlocutory orders in a criminal case will possess sufficient "distinctness" that they may be reviewed on the authority of section 1291 "without regard to the limitation of [section] 3731.")

The government's main argument is that section 1291 in and of itself authorizes this appeal, under the principles expressed in *Cohen. Cohen* provides for appeal under section 1291 of "that small class [of decisions] which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen,* 337 U.S. at 546, 69 S.Ct. at 1225–6.

The High Court has applied *Cohen* to criminal cases three times. In *Stack v. Boyle,* 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 1 (1951), the Court authorized a criminal defendant to appeal from a pretrial order setting bail.[9] In *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), the Court permitted a defendant to appeal from a denial of a pretrial motion to dismiss for double jeopardy reasons. In *Helstoski v. Meanor,* 442 U.S. 500, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979), a member of Congress was allowed to appeal a denial of his motion to dismiss the indictment based on the speech and debate clause.

The *Abney* Court pointed to several reasons why the appeal should lie. First, the order in question was final in that it constituted "a complete, formal, and, in the trial court, final rejection of [the] criminal defendant's double jeopardy claim. There [were] simply no further steps that [could] be taken in the District Court to avoid the trial the defendant maintains is barred by the Fifth Amendment's guarantee." 431

U.S. at 659, 97 S.Ct. at 2040. Second, the nature of the claim was fully separate from the question of guilt or innocence. Third, the order was effectively unreviewable after a final judgment. Fourth, an important right would be "significantly undermined" if appellate review were postponed; the defendant would have been "forced ... to endure the personal strain, public embarrassment, and expense of a criminal trial more than once for the same offense." 431 U.S. at 660–61, 97 S.Ct. at 2041.

We agree with the government that the order, here, is final within the meaning of *Abney* and *Cohen.* The government has pursued all the steps available to it in the district court, and the district judge has set bail and refused to reconsider his order. That the judge, in setting bail, provided for a *Nebbia* hearing, which has not yet been held, does not render the decision any less final. Such a hearing only focuses on the amount of bail; the trial judge does not revisit his decision to set bail at that time.[10]

In addition, we agree that the bail inquiry is separate from the issue of guilt or innocence. The order also is effectively unreviewable on appeal from final judgment of conviction. Moreover, if the conditions of bail were too lenient and the defendant absconded, there would be no such judgment. The second and third factors of the *Cohen* test are thus present.

The problem with the government's argument arises when we consider the fourth *Abney/Cohen* requirement that an important right be impaired. We have no important right asserted by the government in this case. We emphasize, first, that, in evaluating the "importance" and the "right" involved for purposes of determining in the abstract whether government appeals of bail decisions lie, we look only at the nature of the district court's decision and its effect on the government's role in bail proceedings generally. We do not look at the peculiarities of this particular case.

---

**9.** The Bail Reform Act now provides the same relief as had *Stack.*

**10.** A *Nebbia* hearing is held to ensure the adequacy of the bail to keep the defendant from absconding.

In other words, we are evaluating here simply whether section 1291 gives the government a right to appeal from all district judges' bail determinations. We are *not* looking at whether this particular defendant might pose such a danger to the community[11] or to the integrity of the judicial process that the district judge abused his discretion in providing for his release. Such an inquiry is more appropriately the focus of an appeal of a protective order, denied by the district judge, or of a petition for a writ of mandamus to cover one extraordinary case.

What type of important rights bring the *Cohen* doctrine into play? *Cohen* involved a pretrial denial of a corporation's motion to have the shareholders post security in a derivative suit. The corporation's right to compel security was at stake. In *Stack*, the defendant's right to bail was in question. In *Abney*, the defendant's right to be free from double jeopardy was threatened. The government has no similar right to keep an accused person off the street pending trial.

The government argues that in *United States v. Caggiano*, 660 F.2d 184 (6th Cir. 1981) (allowing a government appeal from an interlocutory order disqualifying the entire U.S. Attorney's office) the government had no "right," and yet it still prevailed. There, however, the government was being wholly prohibited from doing its duty, enforcing the law. A duty, in that sense, is sufficiently akin to a right to meet the *Cohen* requirement. The government has no similar important duty that it is prevented from performing by a pretrial bail order.

The only "right" or "duty" the government can assert here is as a representative of the public interest in assuring that a defendant will appear at trial. The government thus asserts the general public's right to be free from unduly high risks that accused criminals will remain in the population at large rather than face trial or its own duty to minimize such a risk. We find this "right" to be too nebulous to recognize by allowing government appeals of bail determinations under section 1291.

■ We take care to point out that we are not addressing the government's right to appeal, under section 1291, the district court's denial of a motion for a protective order or for other relief when such is necessary to protect the integrity of the trial process. It is well settled that courts have the inherent power to employ extreme measures, including the revocation or denial of bail, to protect the integrity of the trial process. *See United States v. Wind*, 527 F.2d 672 (6th Cir.1975); *United States v. Gilbert*, 425 F.2d 490, 491-2 (D.C.Cir. 1969). The court's denial of such relief might be appealable under section 1291 because it might directly and drastically impair the government's right to protect its witnesses and thus the integrity of the trial process. Such a right is not implicated in the statutory pretrial bail determination; the only question in such a determination is whether the defendant will abscond. *See* section 3146 (listing factors involved in decision whether defendant will appear for trial).

We realize that as a practical matter the section 3146 decision as to whether the defendant should be released on bail, taking into account the factors listed in that section, will often be made at the same time as the court's decision whether to detain a defendant because he poses a substantial threat to the integrity of the judicial process. Indeed, when evidence on both questions is presented to the bail decision maker, he must consider both in his bail determination. *See infra* section III. For the purpose of determining the appealability by the government of section 3146 bail decisions, however, we must separate

---

**11.** Danger to the community is not a factor in this case. The government cites only a fear that its witness will be killed. The likelihood that the defendant may pose a danger to the community may be relevant to the initial bail decision to the extent it affects the likelihood that the defendant will abscond. *Compare* section 3146 (omitting danger to the community as a factor in the pretrial bail determination) with section 3148 (including danger to the community as a factor in post-conviction bail pending appeal).

out the two. If we were to allow, without qualification, government appeal from section 3146 orders setting bail under section 1291, we would create a system encouraging government delay and harassment of accused persons. The government could appeal any bail condition that it felt should be more stringent, regardless of the factual situation. As we have stated above, we find no important government right that is threatened, or duty that is impaired, by a district judge's order setting pretrial bail.[12]

In summary, we have found no government right to appeal a bail determination by the district court to this court in this case for three reasons. First and foremost, the Bail Reform Act, which provides a comprehensive scheme for bail determinations, makes no provision for a government appeal though it provides for appeal by the accused. Second, 18 U.S.C. § 3731 does not apply to bail determinations but only covers orders regarding pretrial discovery and suppression of evidence questions, and orders constituting a termination of the case such as dismissals of an indictment or judgments of acquittal. Third, the *Cohen* doctrine, allowing appeal of a narrow class of collateral orders, is inapposite because the government has no sufficiently important right which is threatened by a bail determination. Having found no authorization for a government appeal, we turn to the mandamus question.

### III.

■ Our authority to issue a writ of mandamus stems from the All Writs Statute, 28 U.S.C. § 1651.[13] "The remedy of

mandamus is a drastic one, to be invoked only in extraordinary situations." *Kerr v. United States District Court*, 426 U.S. 394, 402, 96 S.Ct. 2119, 2123, 48 L.Ed.2d 725 (1976). Mandamus is "appropriate only in extraordinary cases to remedy a clear usurpation of power or abuse of discretion." *In re Extradition of Ghandtchi*, 697 F.2d 1037, 1038 (11th Cir.1983). It is only available when there is no other adequate means to obtain relief. *In re Oswalt*, 607 F.2d 645, 648 (5th Cir.1979).

■ We first address the final criterion. We have found an order setting bail not appealable by the government. We have also noted above that the order setting pretrial bail is effectively unreviewable after a final judgment. Accordingly, the government has no other adequate means to obtain relief in this case.

The main question to be resolved is whether the district judge clearly abused his discretion in this case, and, if so, whether the circumstances are extraordinary enough for us to employ our discretionary remedy of the writ of mandamus. *See In Re Estelle*, 516 F.2d 480, 484 (5th Cir.1975) (concluding that even if the court found that the district judge had abused his discretion, the petitioner was not "automatically ... entitled to the ... Writ.")

In this case, the district judge clearly indicated that he believed the eighth amendment guaranteed the defendants the right to bail. He noted that while he personally disagreed with the amendment's policy, he was compelled to fashion a rea-

---

**12.** We note that, if the government believes these defendants or others are threatening the integrity of the judicial process, there is nothing to prevent it from moving the district court for a protective order and, as part of the relief, for more stringent bail conditions. Such a motion would give the court complete notice of the scope of the threat to the judicial process and would present alternatives other than increasing bail which might in themselves be sufficient to avoid the problem. As we have stated in the text *supra*, the right of the government to appeal, under section 1291, the denial of such a motion would present a different question and

implicate different interests than are before us now.

**13.** Section 1651 provides:
**Writs**
    (a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.
    (b) An alternative writ or rule nisi may be issued by a justice or a judge of a court which has jurisdiction.

sonable bail order for each defendant.[14] The judge went on to set bail without having seen the complete record in the case and without the benefit of the testimony before the magistrate.

█ It is well established that the eighth amendment does not give a defendant an absolute right to bail. *See United States v. Graewe*, 689 F.2d 54 (6th Cir.1982) (bail properly denied in view of defendant's involvement in past murder of informants); *Bitter v. United States*, 389 U.S. 15, 16, 88 S.Ct. 6, 7, 19 L.Ed.2d 15 (1967) (noting that trial judge has broad power to revoke bail). In view of the district judge's express statements that he considered himself bound by a contrary rule, and in view of his making his decision without benefit of the full record, we conclude that he did not exercise the discretion mandated by the Bail Reform Act and relevant case law.[15] Because the government alleges sufficient evidence of imminent danger to one of its key witnesses, we find this to be one of the extraordinary cases where we must grant a writ of mandamus to compel the judge to exercise his discretion within the proper parameters.

*United States v. Nebbia*, 357 F.2d 303 (2d Cir.1966), supports our decision. There, the district court summarily granted an accused's application for release on $100,-000 cash bail and denied a cross-application by the government to require a surety in addition to the cash. The district judge indicated that he felt bound as a matter of law to accept the cash bail without a hearing. The Second Circuit noted law stating that the "deposit of cash bail is not sufficient to deprive the court of the right to inquire into other factors which might bear on the question of the adequacy of the bail." *Id.* at 304. The court then issued a writ of mandamus to compel the judge to exercise his discretion whether to hold a hearing on the adequacy of bail.

*In re Extradition of Ghandtchi, supra,* also implicitly supports our position. There, this court refused to issue a writ of mandamus to compel a magistrate to deny bail pending an extradition hearing. We noted that the magistrate both had applied the appropriate legal standard and had not abused her discretion in applying it. To the contrary, in this case the judge did not apply the appropriate legal standard.

. We note that in issuing the writ we cannot compel the district judge to decide the bail issue in any particular way, nor do we seek to do so. We only direct the district judge to exercise his discretion within its proper scope, that is, including as an option for his consideration the denial of bail altogether.

GOLDBERG, Senior Circuit Judge, specially concurring:

I write this special concurrence not because I object to dicta per se; I am a firm believer in it as an educational tool. In this case, though, I do not believe in the substance of certain dicta in the majority opinion and must pause to note my disagreement.

The majority opinion acknowledges that the government has no right to appeal

---

**14.** We commend the district judge for expressing the basis on which he exercised his discretion. Such conduct enables us better to conduct our review and ensure that the laws are correctly implemented.

**15.** We note that the Bail Reform Act was intended to supplement prior case law regarding the power of courts to deny bail where the defendant poses certain dangers. House Report 1541, 1966 *U.S.Code Cong. & Admin.News*, pp. 2293, 2296, states:

This legislation does not deal with the problem of the preventive detention of the accused because of the possibility that his liberty might endanger the public, either because of

the possibility of the commission of further acts of violence by the accused during the pre-trial period, or because of the fact that he is at large might result in the intimidation of witnesses or the destruction of evidence ... A solution goes beyond the scope of the present proposal and involves many difficult and complex problems which require deep study and analysis. The present problem of reform of existing bail procedures demands an immediate solution. It should not be delayed by consideration of the question of preventive detention. Consequently, this legislation is limited to bail reform only.

from a district court order setting bail. The opinion, however, distinguishes this situation from a hypothetical one where the district court denies a government motion for a protective order requesting revocation or denial of bail. The majority suggests that denial of the latter type of relief "might be appealable under section 1291 because it might directly and drastically impair the government's right to protect its witnesses and thus the integrity of the trial process."[1] This distinction takes its vitality from a purely formalistic application of the *Cohen* doctrine.[2] Any interests of the government—admittedly at issue in bail determinations whenever those interests are raised by the government—become no less "nebulous" and no more consistent with the *Cohen* doctrine when raised in a motion for a protective order. In the Bail Reform Act, Congress chose to keep the government outside the Circuit courthouse with respect to any government disagreement with bail determinations.[3] I would not frustrate that decision by letting the government in the courthouse back door.

Today, the majority opinion employs dicta to provide the government with a map. This map details a possible alternative way of appealing a district court's exercise of its discretion to set bail. I believe such a step increases the danger of government delay and harassment of accused persons. But, because the majority has declared that the "protective order" issue is not before us, I must leave it to a future panel to erect the proper roadblocks. Aside from this single disagreement, I am proud to concur in this excellent opinion.

---

1. Majority Opinion, p. 918.

2. *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1978).

3. See Majority Opinion, pp. 915–916.