**UNITED STATES of America**

v.

**Emilio L. IPPOLITO and
Susan L. Mokdad.**

No. 96–64–CR–T–23(E).

United States District Court,
M.D. Florida,
Tampa Division.

May 9, 1996.

Ernest F. Peluso, Asst. U.S. Atty., Tampa, FL, for United States.

Donald E. Horrox, Clearwater, FL, for Emilio L. Ippolito.

Jeffrey G. Brown, Clearwater, FL, for Susan Mokdad.

Brian L. Weakland, Tampa, FL, for John J. Gentz.

Brent D. Armstrong, Clearwater, FL, for Phillip Marsh.

Bjorn Erik Brunvand, Clearwater, FL, for Richard Allen Brown.

Thomas J. Hanlon, Tampa, FL, for Charles P. Dunnigan.

Timothy James Fitzgerald, Tampa, FL, for Jack W. Warren.

Rosanne L. Brady, Tampa, FL, for Jack M. Franz.

Anne F. Borghetti, Clearwater, FL, for Laurent J. Moore.

## ORDER

MERRYDAY, District Judge.

The United States of America has lodged in this court a motion to review and revoke an order of release from pretrial detention entered by United States Magistrate Judge Thomas B. McCoun on behalf of Emilio Ippolito and Susan Mokdad after detention hearings held by the magistrate judge on March 18, 1996 and March 21, 1996. At the conclusion of the hearings, the magistrate judge held that the activities of the defendants involved only "threats but nothing more." The magistrate judge found an absence of evidence that the defendants. had ever "executed" any of their pertinent threats. Finally, the magistrate judge noted that the threats were not intimidating to the court and predicted that the threats would not interfere with the United States' prosecution in this instance.[1] These findings are noticeably at odds with the magistrate judge's observation that there were at least two instances where the defendants or their confederates had "successfully interfered with court proceedings."

Subsequent to entry of his findings, the magistrate judge imposed a series of conditions that were crafted in an effort to preclude conduct by the defendants designed to intimidate or threaten either witnesses or jurors. The conditions imposed by the magistrate judge include "house confinement," electronic monitoring, and several special conditions that attempt to address defendants' membership in and activities in conjunction with a particular construct, conceived and advanced by the defendants and others, operating under the legend "Constitutional·Court of We the People" ("CCWP"). The magistrate judge stayed his order pending a motion for review by the United States in accordance with 18 U.S.C. § 3145(a)(1).

The United States has filed a motion for review and the defendants have responded.

Pursuant to Section 3145(a)(1), the district court must promptly undertake a de novo evaluation to determine the propriety of the magistrate judge's order. United States v. King, 849 F.2d 485 (11th Cir.1988); United States v. Gaviria, 828 F.2d 667 (11th Cir. 1987); United States v. Hurtado, 779 F.2d 1467 (11th Cir.1985). Accordingly, this court has reviewed the United States' motion, the attachments, the defendants' responses, the transcripts of the detention hearings, and all exhibits. Also, a detention hearing was held by this court and evidence was received, including additional evidence from the United States in the form of video tapes and additional testimony from Special Agent Robert Carroll of the Federal Bureau of Investigation.

After consideration of the evidence and the written and oral arguments by the parties, the court finds as follows[2]: (1) For more than two years the defendants have assertively acted in concert and with others in a purposeful and joint endeavor to convey threatening communications to witnesses, grand and petit jurors, judges, court personnel, prosecutors, investigators, and others implementing the lawful functions of government. (2) The defendants are the effective and inspirational leaders and agents provocateur of the joint endeavor and have conceived and issued many of the threatening communications, which often arise from their home, the seat of the putative CCWP. (3) The defendants' threatening communications included threats of "dangerous physical confrontations," arrest by the "militia," incarceration, custody, and criminal trials in and under the auspices of the CCWP. The defendants suggest trials for treason and sedition and claim authority to administer commensurate punishment. (4) These threats have succeeded in tangibly interfering with two federal trials. (5) The defendants have generated these threats and pursued activity

---

1. Whether court personnel, law enforcement, and jurors will courageously perform their duties despite lawless threats is no basis on which to excuse, ignore, or otherwise countenance those threats.

2. These "findings" are for present purposes only and carry forward no binding effect or influence on the ultimate determination of the merits of any indictment. The limited record, the stage of the proceedings, and the standard of proof distinguish these interim findings from an adjudication on the merits of the case.

under the guise of the CCWP notwithstanding the deterrent implicit in a permanent injunction by the Florida Supreme Court requiring the defendants to cease and desist practicing law, acting as judges, and aiding and abetting that conduct. (6) During the last several months the defendants have been released on bond, pending their appeal from a state conviction. (7) Notwithstanding actual knowledge of the Florida Supreme Court's injunction and the state-imposed conditions of release, the defendants have continued their obstructive activities unabated. This apparent imperviousness to court supervision arises in important part from the defendants' fundamental belief that no governmental court has jurisdiction over them. (During the hearing before this court, Ippolito availed himself of an opportunity to edify the court by presenting a monologue that effectively conveyed the ferocity of his convictions and the tenacity of his commitment to them. A videotape presented by the United States exemplifies the mode by which these convictions are actualized—threats of physical violence against the harmless and the defenseless. The defendants, tasting success, have employed this tactic against others, including jurors.) (8) The threats issued by the defendants either expressed or unmistakably implied the use of physical force against the recipients. To at least that extent, these threats are "crimes of violence," within the meaning of 18 U.S.C. §§ 16(a) and 3156(a)(4)(A).

▪ Section 3142(f)(2)(B) authorizes pretrial detention if the court finds "a serious risk that the [defendants] will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure or intimidate a prospective witness or juror." Additionally, a court has the "inherent right to use extreme measures, including the revocation or denial of bail, to protect the trial process." *United States v. Fernandez–Toledo*, 737 F.2d 912, 918 (11th Cir.1984); *United States v. Wind*, 527 F.2d 672 (6th Cir.1975). This inherent authority includes both detaining defendants to insure the integrity of the trial process and preventing defendants from threatening and intimidating jurors and witnesses. *Carbo v. United States*, 82 S.Ct. 662, 668, 7 L.Ed.2d 769 (1962); *United States v. Payden*, 768 F.2d 487, 489 (2d Cir.1985); *United States v. Gotti*, 794 F.2d 773, 778 (2d Cir.1986); *United States v. Graewe*, 689 F.2d 54 (6th Cir.1982) (Per Curiam). Section 3142(f)(2)(B) codifies the long standing, inherent power of the court.

▪ The evidence, considered in the aggregate and highlighted by the statements of the defendants during the detention proceedings, establishes indisputably that neither Ippolito nor Mokdad acknowledges the jurisdiction or authority of any state or federal court. A clear corollary of the defendants' belief system is that they are substituting themselves and their individualized notion of moral and legal matters *in toto* for the system of constitutionally established adjudication preeminent in the United States. However, the important point is not their views (they are entitled to their views). The important point is the actions taken consequent upon their views.

Although by happy circumstance the defendants might conform to a court-prescribed condition of release, they are incapable of submission to a judicial system they regard as counterfeit and malignant. For those same reasons, threats of violence are a tool agreeable to the defendants as they attack their perceived enemy, the courts of the states and the United States. No paper I sign can change that.

In all events, the defendants have typically disobeyed lawful but disagreeable court orders. The evidence establishes that, if not incarcerated, they will continue to transmit threats to judges, jurors, and witnesses as long as they have the means to do so. The United States has shown that only detention stops the defendants from engaging in their obstructive behavior.

I find (1) that the United States has proven by at least clear and convincing evidence with regard to both Ippolito and Mokdad that there is a serious and imminent risk that both and each will continue to threaten, intimidate, and attempt to threaten and intimidate jurors and witnesses in this case and that the threats and acts of obstruction are "crimes of violence" as defined by the Bail Reform Act; (2) that the conditions of release imposed by the magistrate judge are inadequate; and (3) that there are no condi-

tions or combination of conditions of release that adequately protect the safety of the community.

ACCORDINGLY, the United States' motion is granted, and the oral order of the magistrate judge releasing Ippolito and Mokdad is VACATED.

Ippolito and Mokdad shall be DETAINED pending trial. The Court further orders (1) that the defendants are committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; (2) that the defendants be afforded reasonable opportunity for private consultation with counsel; and (3) that, on order of a court of the United States or on the request of an attorney for the United States, the person in charge of the corrections facility in which the defendants are confined shall deliver the defendants forthwith to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

ORDERED.