999 F.2d 548
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Dalton Loyd WILLIAMS, Petitioner-Appellant,
v.
William PRICE; Gale A. Norton, Attorney General,
Respondents-Appellees.
 No. 92-1291.
 United States Court of Appeals, Tenth Circuit.
 June 29, 1993.
 
 Before SEYMOUR and TACHA, Circuit Judges, and ROGERS,* Senior District Judge.
 ORDER AND JUDGMENT**
 TACHA, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Petitioner-appellant Dalton Loyd Williams appeals the district court's judgment adopting the recommendation of the United States magistrate judge that Williams' petition for writ of habeas corpus be denied. Because we find no federal constitutional violations, we affirm.
 
 
 3
 In 1974, Williams was charged with aggravated robbery, conspiracy to commit aggravated robbery and two counts of first degree assault. Pursuant to a plea agreement, Williams pled guilty to aggravated robbery and second degree assault. The remaining charges were dismissed, and Williams was sentenced to twenty to forty years on the aggravated robbery charge and an indeterminate to ten-year sentence on the second degree assault charge. Four months later, Williams escaped from prison.
 
 
 4
 Williams was arrested several days later in Texas. There, he was convicted of two counts of murder, one aggravated robbery, five residential burglaries, and eight aggravated assaults. Williams was incarcerated in Texas until 1986, serving the Texas sentences. He then was returned to Colorado to resume serving his Colorado sentences.
 
 
 5
 In 1988, Williams' Colorado convictions were vacated on a Colo.R.Crim.P. 35(c) motion, and the original charges were reinstated. Because Williams had a conflict with the public defenders' office, a private attorney was appointed to represent him. Williams quickly became dissatisfied with his attorney and made several motions for appointment of different counsel. After these motions were denied, Williams purported to terminate his attorney's representation and to proceed pro se. Although the trial court initially permitted Williams to proceed pro se, the court later refused to permit self-representation, based on Williams' stated inability to represent himself.
 
 
 6
 On the day of trial, Williams elected to plead guilty to all four charges. After a hearing, he was sentenced to concurrent terms of thirty-five to forty years on each of the four convictions. Although Williams was credited for the time he served in Colorado on his prior convictions, he was not given credit for the time he was incarcerated in Texas.
 
 
 7
 Williams appealed his 1988 convictions and sentences to the Colorado Court of Appeals, which affirmed. Certiorari review was denied by the Colorado Supreme Court. Williams then brought this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in the United States District Court for the District of Colorado. The district court adopted the magistrate judge's recommendation that Williams' petition be denied, and this appeal followed.
 
 
 8
 Williams raises a number of issues in his appeal. He first argues that his convictions are invalid because the trial court was without jurisdiction, because he was denied his right to self-representation, and because his plea was not voluntarily given. He then raises several double jeopardy challenges to the reinstatement of the original charges. Finally, he contends that he was denied due process during sentencing and in the resolution of certain post-conviction petitions. We review de novo the district court's legal conclusions and determinations on mixed questions of law and fact. Case v. Mondragon, 887 F.2d 1388, 1393 (10th Cir.1989), cert. denied, 494 U.S. 1035 (1990).
 
 
 9
 Jurisdiction, Self-Representation, and Voluntariness
 
 
 10
 Williams argues that the state court was without jurisdiction because its consent was not obtained before filing a direct information in January of 1974, and that it could not give consent in 1988, based on the statute of limitations. We need not decide whether this issue is jurisdictional because the information clearly contains the court's consent, granted on January 23, 1974, as required by Colo.R.Crim.P. 7(c). See Trial Ct.R. I, 373.
 
 
 11
 Williams next argues that he was deprived of his fundamental right of self-representation. The record, however, demonstrates that Williams did not believe himself capable of self-representation, and that, in reality, he was requesting different counsel. See, e.g., Notice of Termination of Counsel, Trial Ct.R. I at 187 ("defendant ... is unable to prepare and represent himself at trial; and ... to prepare a defense for trial.... [D]efendant does not give up or waive his right to counsel."). Order, Trial Ct.R. I at 253 ("The court determines that this defendant is incapable of adequately representing himself ... and the defendant readily acknowledges this. The defendant requests other counsel be appointed, but otherwise he will represent himself."); Motion to Reconsider, Trial Ct.R. I at 256 ("The Defendant acknowledges that he is without the skill necessary to defend himself.... He desires to be represented by Counsel...."). As recognized by the magistrate judge, Williams did not clearly and unequivocally assert his right to self-representation, and thus there was no constitutional violation. See United States v. Treff, 924 F.2d 975, 978-79 (10th Cir.), cert. denied, 111 S.Ct. 2272 (1991).
 
 
 12
 The record also disposes of Williams' contention that his guilty plea was involuntary because he was denied his right to self-representation and because the trial court offered him a plea bargain that was not honored. When Williams was asked expressly whether he was entering his plea because of counsel, he responded that he was entering his plea voluntarily, based on the evidence. Trial Ct.R. X, 42-43. On at least four occasions during the court's inquiry, Williams acknowledged that he had not been promised anything and had not entered into any understandings regarding his guilty plea. Trial Ct.R. X, 21, 30-31, 37, 39. Although he expressed the belief that his appellate rights would remain intact, no mention was ever made of an appeal bond. Trial Ct.R. X, 21, 29-30, 31, 40, 43-44. For these reasons, we hold that Williams' plea was freely and voluntarily given.
 
 Double Jeopardy
 
 13
 Williams argues that he was subjected to double jeopardy because the initial conspiracy charge was not dismissed as part of the plea agreement, but rather, for lack of prosecution. The record, however, shows that the conspiracy charge was dismissed in return for Williams' agreement to plead guilty to aggravated robbery and second degree assault. Trial Ct.R. I, 93. Double jeopardy does not bar the refiling of charges that were dismissed as part of a plea bargain if the defendant's guilty plea is later overturned. Ward v. Page, 424 F.2d 491, 493 (10th Cir.), cert. denied, 400 U.S. 917 (1970).
 
 
 14
 Williams also argues that reinstatement of the first degree assault charges violated double jeopardy because (1) he had already satisfied the sentence for second degree assault, and, (2) his earlier guilty plea to second degree assault acted as an acquittal on the first degree charges. His first argument may be resolved quickly: Williams had not completed the assault sentence before charges were reinstated because, as discussed in more detail later, he had no right to credit for his Texas sentences.
 
 
 15
 With respect to Williams' second argument, there is case law from both the United States Supreme Court and the Tenth Circuit directly contrary to his position. Double jeopardy does not prevent reprosecution for a greater offense after a plea to a lesser offense has been set aside because "[t]he acceptance of a guilty plea to lesser included offenses ... has none of the implications of an 'implied acquittal.' " Ohio v. Johnson, 467 U.S. 493, 501-02 (1984); Ward, 424 F.2d at 493. By pleading to the lesser charge, the defendant has not been placed in direct peril of conviction on the greater charge, and his conviction does not " 'represent[ ] a resolution [in the defendant's favor], ... of some or all of the factual elements of the [other offense].' " United States v. Scott, 437 U.S. 82, 97 (1978) (quoting United States v. Martin Linen Supply Co., 430 U.S. 564, 571 (1977)).
 
 Due Process
 
 16
 Williams raises numerous due process challenges to his sentences. He first claims that he was not given notice that his prior criminal record would be used to enhance his sentence and was not given the opportunity to challenge the validity of the Texas convictions. The record, however, belies both these contentions. Before the hearing, Williams was provided with a copy of the presentence report, which detailed his extensive criminal history. At the sentencing hearing, he was given an unlimited opportunity to challenge his prior convictions, and, in fact, stated that his "only" objection was that the court should not consider those convictions which occurred more than ten years prior to sentencing. See Trial Ct.R. XI, 22.
 
 
 17
 There is also no evidence that vindictiveness motivated the court to impose a longer sentence on Williams. Upon reconviction, a court may impose a penalty greater than that originally imposed if it can identify events since the original conviction that justify a more severe sentence. People v. Wieghard, 743 P.2d 977, 978-79 (Colo.Ct.App.1987). Here, Williams' Texas convictions provided a basis for imposing a harsher sentence.
 
 
 18
 Williams' argument that he should have been credited with the time he served in Texas is also unavailing. Williams' incarceration in Texas was attributable solely to his Texas convictions, and is not creditable to the Colorado sentences from which he escaped. See Barber v. Cooper, 719 P.2d 1094, 1095 (Colo.1986). The Texas requirement that its sentences be served concurrently cannot affect the running of a Colorado sentence. Unlike Texas, Colorado does not require that its sentences run concurrently with a sentence imposed by a foreign jurisdiction. Id. Similarly, there is no support for Williams' argument that he is entitled to credit because Colorado had a duty to extradite him in 1974. See id. (when state declined to take custody, prisoner was not entitled to credit on Colorado sentence for time served in federal custody). The interstate agreement on detainers imposed no such duty, as that agreement applies only to untried charges in another state. See Colo.Rev.Stat. § 24-60-501 (1988).
 
 
 19
 Next, Williams argues that he was entitled to the benefit of legislation reducing the penalty for a class three felony between July 1, 1979, and July 1, 1985. The government has objected to consideration of this issue, arguing that it was not properly raised and preserved in the state courts. We agree that the issue is procedurally barred. See Coleman v. Thompson, 111 S.Ct. 2546, 2557 n. 1 (1991) (when petitioner fails to exhaust state claim and is now procedurally unable to do so, the claim is procedurally barred). Unless Williams can demonstrate cause for his default and actual prejudice, or that a fundamental miscarriage of justice will result, federal habeas review is barred. Id. at 2565.
 
 
 20
 Here, regardless of whether Williams can establish cause for his default, he cannot demonstrate prejudice from the alleged error, because his claim has no merit. The benefit of amendatory legislation is only available "if requested before a conviction becomes final." People v. Johnson, 638 P.2d 61, 64 (Colo.1981). Further, offenders who committed their crimes prior to 1979 were expressly excluded from the reduced sentencing scheme. See, e.g., People v. Montoya, 647 P.2d 1203, 1204-05 (Colo.1982). Lastly, a defendant is only entitled to the benefit of legislation which is in effect at the time of sentencing, not legislation that has come and gone. Cf. id.
 
 
 21
 Finally, Williams was not denied access to the Colorado courts from 1975 to 1988. His two motions for state habeas corpus relief, submitted in 1975 and 1978, were properly denied as they did not allege that his sentences exceeded statutory limits or that the sentencing court lacked jurisdiction. See Colo.Rev.Stat. § 13-45-103 (1987). When Williams finally did submit a meritorious post-conviction petition to the Colorado courts, he was granted relief. In addition, Williams has not demonstrated how he was prejudiced by any delay in resolving his petitions.
 
 
 22
 The judgment of the United States District Court for the District of Colorado is AFFIRMED.
 
 
 23
 The mandate shall issue forthwith.
 
 
 
 *
 Honorable Richard D. Rogers, United States District Judge for the District of Kansas, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3