OPINION
{¶ 1} Appellant, State of Ohio, appeals from the judgment entry of the Ashtabula County Court of Common Pleas, granting Appellee, Gene Snowden's Motion for a New Trial. Due to the court's conclusion that there was insufficient evidence to sustain the jury's verdict, we need not reach the merits of the State's argument as the instant *Page 2 
appeal is both constitutionally and statutorily barred. Therefore, for the reasons discussed below, the State's appeal is hereby dismissed.
 {¶ 2} Gene Snowden is the grandson of Thelma Haught. In March of 2001, shortly after the death of Haught's husband, Snowden drove Haught to see Attorney Walter Thayer. Haught indicated to Thayer that she was now a widow and wanted someone to help her, yet she still wanted to have some authority over her property. Thayer suggested a Power of Attorney. Haught also wanted Thayer to prepare a Last Will and Testament as well as a Living Will for her.
 {¶ 3} On March 20, 2001, Thayer prepared the Last Will and Testament for Haught, leaving all her assets in equal shares to Snowden and his mother, Mary Snowden, and also prepared a Living Will. Haught executed both that day and on March 23, 2001, Haught executed a Power of Attorney in favor of Snowden.
 {¶ 4} At the time of the Power of Attorney, Haught was 87 years old, in good health and remained in good health until three months prior to her death when she developed congestive heart failure. In June of 2001, Haught moved into an assisted living home, where she resided for approximately four to five months. In that time, Snowden would visit her approximately once a week. Prior to June, Haught would stay at Snowden's house or vice versa because she did not want to be alone. In September, Haught developed pneumonia and was hospitalized for congestive heart failure. She was then relocated to a nursing home facility with intermittent trips to the hospital, until her death in December 2001.
 {¶ 5} With the Power of Attorney, over a time span of approximately nine months, Snowden spent roughly $152,000 in various ways for the benefit of himself and *Page 3 
his family members, significantly depleting Haught's $192,000 in assets. Snowden did however, pay all of Haught's expenses and debts incurred prior to and after her death.
 {¶ 6} On June 23, 2006, the Grand Jury returned an indictment charging Snowden with Falsification, in violation of R.C. 2921.13(A)(9), a felony of the fourth degree; Perjury, in violation of R.C. 2921.11(A), a felony of the third degree; and two counts of Theft, in violation of R.C. 2913.02(A)(1) (A)(2), felonies of the first degree.[1] On November 5, 2007, the charges of Falsification and Perjury were dismissed by the State leaving only the two theft charges.
 {¶ 7} On November 6, 2007, a jury trial was held. At trial, Snowden testified that he kept a small amount of Haught's money in a joint account he had with Haught and the remainder was in an account solely in his name; however on May 26, 2001, Haught's last cash asset of $12,487.32 was liquidated by Snowden and placed into his personal account.
 {¶ 8} At trial, Snowden claimed all the expenditures where made with Haught's knowledge. He testified Thayer advised him he was able to give advancements to his mother and himself because they were the sole beneficiaries of the will. Further, he testified that, from the beginning, he went over Haught's finances with her daily, and then later, on a monthly basis. Additionally, Snowden stated that he never intended to deprive his grandmother and believed he had her consent at all times. Snowden also stated that he had an "off the record" conversation with Thayer, in which Thayer told him *Page 4 
to reduce Haught's assets so they would not be susceptible to Medicaid requirements in the future.
 {¶ 9} The jury heard a narration of Thayer's deposition as he had died prior to trial. The existence of the "off the record" conversation was denied by Thayer in his deposition testimony. Thayer's testimony also reflected Haught had expressed to him that her purpose of obtaining a Power of Attorney was to provide herself with assistance if needed while still maintaining control over her money. Additionally, his testimony showed that Thayer thought Haught was competent and aware of her assets and beneficiaries and capable of handling her own affairs.
 {¶ 10} On November 8, 2007, Snowden was found guilty of Theft, in violation of R.C. 2913.02(A)(2) ("beyond the scope of expressed or implied consent") and not guilty of Theft, in violation of R.C. 2913.02(A)(1) ("without the consent of the owner"). On November 21, 2007, Snowden filed a Motion for a Judgment of Acquittal pursuant to Crim. R. 29(C)[2] or, in the alternative, Motion for New Trial based upon Crim R. 33(A).[3]
 {¶ 11} The trial court's February 13, 2008 judgment entry provided:
 {¶ 12} "In reviewing the sufficiency of the evidence to determine if it supports a criminal conviction, a court must examine evidence admitted at trial in the light most favorable to the prosecution and `determine whether such evidence could have convinced any rational trier of fact that the essential elements of the crime were proven beyond a reasonable doubt.' State v. Condon (2003), 152 Ohio App.3d 629, 647-648. *Page 5 
 {¶ 13} "The Defendant argues that the State of Ohio failed to present any evidence which suggested that Thelma Haught did not consent to the transactions made by the Defendant. The Court agrees with the Defendant in that no evidence was presented at trial that the Defendant, Gene Snowden exceeded the scope of the expressed or implied consent of the money's owner, Thelma Haught. Even when viewing the evidence in a light most favorable to the State of Ohio, the Court finds that the evidence could not convince any rational trier of fact that the essential elements of Theft were proven beyond a reasonable doubt."
 {¶ 14} The trial court concluded the jury's verdict was unsupported by sufficient evidence and was contrary to law. However, the court proceeded to award the state a new trial pursuant to Crim. R. 33.
 {¶ 15} The State timely appeals and raises the following assignment of error:
 {¶ 16} "[1.] The trial court erred in granting appellee's Motion for a New Trial."
 {¶ 17} The State asserts the trial court erred in awarding a new trial because it submitted ample evidence that appellee acted beyond the scope of the consent given him by the victim which consequently supported the jury's verdict. Regardless of the substantive features of the State's assigned error, the double jeopardy clauses of the United States and Ohio constitutions as well as R.C. 2945.67 independently preclude this court from entertaining the instant appeal. We shall treat each theory of dismissal in turn.
 {¶ 18} With respect to the constitutional bar, we recognize the trial court granted Snowden a new trial. The United States Supreme Court has nevertheless emphasized "that what constitutes an `acquittal' is not to be controlled by the form of the judge's *Page 6 
action." See United States v. Martin Linen Supply Co. (1977),430 U.S. 564, 570, citing United States v. Sisson (1970), 399 U.S. 267, 270; see, also, United States v. Fong Foo (1962), 369 U.S. 141, 143; United Statesv. Ball (1896), 163 U.S. 662, 671. Regardless of its designation, a reviewing court must determine whether "the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged.Martin, supra. Here, by ruling the State produced insufficient evidence thereby failing to meet its burden on essential elements of the charges, there can be no question that the judgment of the trial court was an acquittal in substance as well as form.
 {¶ 19} The Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb[.]" By operation of the Fourteenth Amendment, the Fifth Amendment protection against double jeopardy has been applied to the states. Moreover, Section 10, Article I of the Ohio Constitution provides that "no person shall be twice put in jeopardy for the same offense." The double jeopardy clause of each constitution bars (1) a subsequent prosecution for the same offense after acquittal; (2) a subsequent prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. See State v. Gustafson,76 Ohio St.3d 425, 432, 1996-Ohio-299. In a jury trial, jeopardy attaches when the jury is impaneled and sworn. State v. Meade, 80 Ohio St.3d 419,424, 1997-Ohio-332.
 {¶ 20} The United States Supreme Court has held "[t]he Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it has failed to muster in the first proceeding." Burks v. United *Page 7 States (1978), 437 U.S. 1, 11. In essence, when a defendant's conviction has been overturned due to the failure of proof at trial, the prosecution may not complain of prejudice, "for it has been given one fair opportunity to offer whatever proof it could assemble." Id. at 16.
 {¶ 21} In Hudson v. Louisiana (1981), 450 U.S. 40, the United States Supreme Court addressed a situation which parallels the instant case. After a conviction by a jury, the defendant moved for a new trial, which the trial judge granted. Id. at 41.[4] In awarding the defendant a new trial, the trial judge ruled "* * * there was no evidence, certainly not evidence beyond a reasonable doubt, to sustain the verdict * * *." Id. The Supreme Court concluded the trial judge's ruling was unconstitutional as it violated the defendant's right to be free from double jeopardy. Following its ruling in Burks, supra, the Supreme Court specifically held the Double Jeopardy Clause is violated when the state prosecutes a defendant a second time after the trial judge at the first trial granted the individual's motion for a new trial on the ground that the evidence was insufficient to support the jury's verdict. Id. at 44-45. What mattered was the ground for, not the language of the trial judge's order; to the extent the judge determined the state had failed to prove its case, retrial was barred.[5]
 {¶ 22} According to the United States Supreme Court, a determination by a trial judge that the evidence is legally insufficient to sustain a guilty verdict is an acquittal for purposes of the Double Jeopardy Clause. Burks, supra, at 16-17. If a trial court has considered and evaluated the state's evidence and determines that it is legally *Page 8 
insufficient to sustain a conviction, that determination of insufficiency triggers double jeopardy protections; any further proceedings — an appeal by the state or a retrial — are consequently barred. Martin, supra, at 574; see, also, Hudson, supra, 43-45;Tibbs v. Florida (1982), 457 U.S. 31, 42.
 {¶ 23} While the jury found Snowden guilty of the offenses, the trial court, upon considering the evidence in a light most favorable to the prosecution, determined the state presented no evidence on an essential element of theft and therefore failed to meet its burden of proof. By failing to present evidence on an essential element of a crime, the state, by definition, failed to present sufficient evidence to convict on the charge. Jeopardy attached and the state had a chance to prove its case beyond a reasonable doubt but failed to do so. Pursuant toBurks and its progeny, the only recourse available to the trial court was to enter a judgment of acquittal pursuant to Crim. R. 29(C).[6] In light of this necessary conclusion, the Supreme Court of the United States has conclusively observed:
 {¶ 24} "[p]erhaps the most fundamental rule in the history of double jeopardy jurisprudence has been that `[a] verdict of acquittal * * * could not be reviewed, on error or otherwise, without putting [a defendant] twice in jeopardy, and thereby violating the Constitution.'"Martin, supra, quoting, Ball, supra.
 {¶ 25} Pursuant to the Double Jeopardy Clause, the state is precluded from both retrying appellant as well as appealing the trial court's post-verdict ruling on the evidential sufficiency. We are therefore constitutionally required to dismiss the State's appeal. *Page 9 
 {¶ 26} In addition to the constitutional problems permeating this matter, the Ohio Revised Code also prohibits the State from pursuing an appeal under these circumstances. R.C. 2945.67 explicitly sets forth the only situations in which the state may purse an appeal in a criminal case. It provides, in relevant part:
 {¶ 27} "(A) A prosecuting attorney * * * may appeal as a matter of right any decision of a trial court in a criminal case * * * which decision grants a motion to dismiss all or any part of an indictment, complaint, or information, a motion to suppress evidence, or a motion for the return of seized property or grants post conviction relief * * * and may appeal by leave of the court to which the appeal is taken any other decision, except the final verdict, of the trial court in a criminal case * * *." (Emphasis added.)
 {¶ 28} The Second Appellate District has delineated the parameters of the state's ability to appeal and held such rights attach in only four situations:
 {¶ 29} "(1) from a decision that grants a motion to dismiss all or any part of an indictment, complaint, or information; (2) from a decision that grants a motion to suppress evidence; (3) from a decision that grants a motion for return of property; and (4) from a decision that grants post conviction relief. In all other circumstances, the state may appeal with leave of court `any other decision of a trial court except the final verdict. Because R.C. 2945.67 creates an exception to the general rule against the state taking an appeal as of right in a criminal case, * * * the statute must be strictly construed and any appeal taken by the state as of right strictly comply with the terms of the statute." State v. Sanders (Nov. 30, 1994), 2d Dist. No. 94-CA-48, 1994 Ohio App. LEXIS 5485, *4; see, also, State v. Rivers, 8th Dist. No. 86663, 2006-Ohio-3949, at ¶ 13-15. *Page 10 
 {¶ 30} Further, the Ohio Supreme Court has held:
 {¶ 31} "A judgment of acquittal by the trial judge, based upon Crim. R. 29(C), is a final verdict within the meaning of R.C. 2945.67(A) and is not appealable by the state as a matter of right or by leave to appeal pursuant to that statute." State ex rel. Yates v. Court of Appeals forMontgomery County (1987), 32 Ohio St.3d 30, at syllabus; see, also,State v. Keeton (1985), 18 Ohio St.3d 379 (holding "[a] directed verdict of acquittal by the trial judge in a criminal case is a `final verdict' within the meaning of R.C. 2945.67(A) which is not appealable by the state as a matter of right or by leave to appeal pursuant to that statute." Keeton, supra, at 381.)
 {¶ 32} As discussed above, the trial court's conclusion that the state failed to submit sufficient evidence to obtain a conviction represented a judgment of acquittal. The trial court's action was therefore a "final verdict" within the meaning of R.C. 2945.67(A). The statute is clear and must be strictly construed and applied. Thus, in addition to being constitutionally precluded from appealing the trial court's decision, the state is also prevented, by operation of R.C. 2945.67(A), from seeking review of the trial court's judgment.
 {¶ 33} For the reasons discussed in this opinion, the state's appeal is barred and must be dismissed. However, because the judgment entry of the trial court contains a constitutional error, we remand the matter back to the Ashtabula Court of Common Pleas with instructions to enter judgment of acquittal.
MARY JANE TRAPP, J., concurs,
DIANE V. GRENDELL, P.J., dissents with Dissenting Opinion.
[1] R.C. 2913.02 provides, in relevant part: "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: (1) Without the consent of the owner or person authorized to give consent; (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;"
[2] Crim. R. 29(C) provides: "Motion after verdict or discharge of jury. "If a jury returns a verdict of guilty or is discharged without having returned a verdict, a motion for judgment of acquittal may be made or renewed within fourteen days after the jury is discharged or within further time as the court may fix during the fourteen day period. If a verdict of guilty is returned, the court may on such motion set aside the verdict and enter judgment of acquittal. * ** "
[3] Appellant cited Crim. R. 33(A)(4), as a basis for his alternative new trial motion, which provides: (A) "A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights: * * * (4) That the verdict is not sustained by sufficient evidence or is contrary to law."
[4] We underscore that one factual distinction between this case andHudson is, in the instant matter, appellant filed both a motion for acquittal and a motion for new trial.
[5] Although we shall not engage in a thorough analysis of this issue, it is worth noting that, in light of Hudson, Crim. R. 33(A)(4) appears to fly in the face of a defendant's right to be free from double jeopardy.
[6] Although the dissent would prefer to follow the literal statements of the trial court in order to reach the merits of this appeal, it is the substantive foundation, not the formal representations, of the trial judge which controls the analysis under circumstances such as this. *Page 11